Ronald L. SPICER *v.* STATE of Arkansas

CA CR 81-63                           621 S.W. 2d 235

Court of Appeals of Arkansas
Opinion delivered September 23, 1981

*Brown, Compton & Prewett, Ltd.*, by:*James M. Pratt,Jr.*, for appellant.

*Steve Clark*, Atty. Gen., by: *Arnold M. Jochums*, Asst. Atty. Gen., for appellee.

MELVIN MAYFIELD, Chief Judge. Appellant was found guilty of the charges of possession of marijuana with intent to deliver and delivery of marijuana. He was sentenced to ten years and a $10,000 fine on each charge with the sentences to be served consecutively.

In opening statement his attorney told the jury that appellant was a businessman whose business had fallen on hard times. During this period a "little old fuzzy faced scraggly looking boy" approached appellant with an easy way to make money. After repeated requests, the jury was told, appellant delivered some marijuana and was arrested by the boy who turned out to be an undercover state police officer.

After the State had rested, the appellant moved for a directed verdict on the ground that the evidence established he was entrapped. The motion was denied.

On direct examination the appellant told the jury that prior to November 16, 1979, he had never done anything illegal. At that time Deborah Dickinson introduced him to the boy who turned out to be an undercover police officer. She asked appellant to sell the boy some marijuana. "I had never been previously involved in a drug transaction," he said. But times were hard. He needed money. Deborah needed money. So he obtained seventy pounds of marijuana and sold it to the undercover agent. "This was my first and last in the drug business," he said.

On cross-examination the appellant was asked:

Mr. Spicer, isn't it true that you're guilty of possessing

marijuana with intent to deliver on October 7 of 1979, in Hope?

After an objection there was a discussion outside the hearing of the jury during which the court overruled the objection. When the question was asked again a motion for mistrial was made by appellant's counsel and it was denied by the court. The question was then answered as follows:

I am not guilty at no time of — now, I'm not saying that they didn't charge me over there. But, I have never been guilty at no time, except what you know about.

The appellant's only point for reversal is that it was error for the court to allow the prosecuting attorney to ask the question set out above. Under the circumstances involved we do not think the court was in error.

As the Arkansas Supreme Court pointed out in the case of *Gustafson* v. *State*, 267 Ark. 278, 590 S.W.2d 853 (1979), Rule 608 (b) of the Uniform Rules of Evidence has made a very definite — even drastic — change in how a witness may be cross-examined. This is especially true in criminal cases because, in the past, it was proper to ask a defendant on cross-examination if he had been guilty of almost any crime. Rule 608 (b) has changed that. Under Rule 609, the credibility of a witness may be attacked by evidence that he has been convicted of certain crimes. But Rule 608 (b) says that specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility (other than conviction of a crime as provided in Rule 609) may not be proved by *extrinsic* evidence but may be inquired into on cross-examination.

However, *Gustafson* said that before specific instances of conduct may be asked about under Rule 608 (b), three conditions have to be met: (1) the questions have to be asked in good faith, (2) the probative value of the conduct must outweigh any prejudicial effect, and (3) the conduct must relate to truthfulness or untruthfulness. These conditions were again stated by the Supreme Court in *Divanovich* v. *State*, 271 Ark. 104, 607 S.W. 2d 383 (1980), and by the Court

of Appeals in *Harper* v. *State*, 1 Ark. App. 191, 614 S.W. 2d 237 (1981).

Two other important aspects of this matter are discussed in those cases. First, not every instance of misconduct relates to truthfulness or untruthfulness. As we said in *Harper*:

> *Gustafson* indicated that misconduct relating to truthfulness would include forgery, perjury, bribery, false pretense, theft, and embezzlement, but said, "Obviously, some misconduct would not bear on truthfulness. For example, murder, manslaughter or assault do not *per se* relate to dishonesty." And in *Divanovich* the court said, "Questions regarding appellant's violent nature and destruction of property are wholly unrelated to his propensity for honesty and, therefore, improper."

Also, it should be remembered that the acts of misconduct which may be asked about on cross-examination cannot be proved by *extrinsic* evidence. So, when the question is answered the matter is ended. If the answer is negative, no evidence of misconduct has been produced but a prejudicial question may have been asked. As *Gustafson* said, "a prosecutor, who seeks to have a defendant make an admission concerning a felony when there has been no conviction, hazards a reversal, absent a showing of probative value, because of the prejudicial nature of the question."

We do not agree with the State's contention that the question asked appellant on cross-examination was proper under Uniform Evidence Rule 404 (b). The State says it was proper because it had to do with appellant's prior knowledge and involvement with marijuana and was, therefore, relevant to the issue of entrapment. But the conduct was denied and there is no evidence in the record that it occurred. In *Spears* v. *State*, 264 Ark. 83, 568 S.W. 2d 492 (1978), relied upon by the State, there was evidence by a witness that he had purchased controlled substances from the appellant in that case. Since the appellant here did not admit guilt of the crime asked about and since there was no other evidence to

show it, there is no evidence to which Rule 404 (b) can apply.

However, we do agree with the State's contention that the question asked by the prosecuting attorney was permissible cross-examination.

In *Montague* v. *State*, 219 Ark. 385, 242 S.W. 2d 697 (1951), the defendant was charged with manslaughter as a result of an automobile collision. On direct examination he testified that he had not been arrested since he had been in West Memphis. On cross-examination he was asked if he had not been arrested for a traffic violation in Forrest City about a month before the wreck for which he was on trial and the court on appeal said:

> Counsel for the State had a right to question appellant on cross-examination as to prior arrests, in the circumstances, in an effort to show that he had not truthfully answered the above questions propounded by his own counsel on direct examination.

While that case was decided prior to the Uniform Rules of Evidence, the same result is reached in federal courts which have the same rule as our 608 (b).

In *United States* v. *McClintic*, 570 F. 2d 685 (8th Cir. 1978), the court said:

> The defendant, testifying in his own behalf, asserted that the first time in his life when he had done anything illegal was when he participated in organizing the Paper Place scheme in Rockford, Illinois. On cross-examination, however, the prosecutor inquired into the defendant's attempt in 1973 to sell a two-hundred dollar ring for $8,000. ... The trial court ruled, over objection, that this inquiry was proper cross-examination. Defendant argues that it unfairly prejudiced him by presenting prior criminal acts which bore no relation to the issues at trial. We disagree.

Moreover, the ring-swindle cross-examination was proper as impeachment by contradiction. C. McCormick, *McCormick on Evidence*, § 47 at 97 (2 ed. 1972). By painting a picture of himself as an innocent who succumbed to sympathy for Morrissey in the Rockford, Illinois scheme, the defendant invited cross-examination concerning this previous misconduct.

In *United States* v. *Contreras*, 602 F. 2d 1237 (5th Cir. 1979), *cert. denied*, 444 U.S. 971, the court said:

Alvaredo testified on direct examination that he observed the DEA agent lift a "coke" spoon to his nose, and that he knew it was a "coke" spoon "because I have seen a bunch of them in Playboys and this and that."

On cross examination, the prosecutor inquired into Alvaredo's knowledge of cocaine and related paraphernalia, at one point, asking whether Alvaredo had discussed with a DEA agent "going to Ft. Stockton to purchase large quantities of cocaine." Alvaredo denied the discussion, and the court properly overruled the defense's objection to the inquiry.

Contrary to appellant's assertions, Rule 608 of the Federal Rules of Evidence is not applicable to this situation. This is not a case where specific instances of misconduct, totally unrelated to the witness' substantive testimony, were used in an attempt to impeach. Alvaredo's direct testimony revealed the alleged basis for his knowledge that the spoon he observed was a "coke" spoon. The government was entitled to test the credibility and factual foundation of that statement.

In *Carter* v. *Hewitt*, 617 F. 2d 961 (3rd Cir. 1980) the court in discussing Federal Rule of Evidence 608 (b) said:

The principal concern of the rule is to prohibit impeachment of a witness through extrinsic evidence of his bad acts when this evidence is to be introduced by calling *other* witnesses to testify. Thus, Weinstein and Berger described the extrinsic evidence ban as follows:

Courts often summarize the no extrinsic evidence rule by stating that "the examiner must take his [the witness's] answer." This phrase is descriptive of federal practice in the sense that the cross-examiner cannot call other witnesses to prove the misconduct after the witness' denial; it is misleading insofar as it suggests that the cross-examiner cannot continue pressing for an admission — a procedure specifically authorized by the second sentence of Rule 608 (b).

3 J. Weinstein & M. Berger, *Weinstein's Evidence* par. 608[05], at 608-22 (1978) (footnote omitted).

Similarly, McCormick writes:

In jurisdictions which permit character-impeachment by proof of misconduct for which no conviction has been had, an important curb is the accepted rule that proof is limited to what can be brought out on cross-examination. Thus, if the witness stands his ground and denies the alleged misconduct, the examiner must "take his answer," not that he may not further cross-examine to extract an admission, but in the sense that he may not call other witnesses to prove the discrediting acts.

E. Cleary, *McCormick on Evidence* § 42, at 84 (2d ed. 1972) (footnotes omitted).

Thus, the great majority of the decisions finding violations of Rule 608 (b) do so when the extrinsic evidence that is challenged is obtained from a witness *other* than the one whose credibility is under attack. When, however, the extrinsic evidence is obtained from and through examination of the very witness whose credibility is under attack, as is the case here, we must recognize that the rule's core concerns are not implicated.

A limitation on the right to cross-examine about a

matter brought out by direct is found in evidence Rule 403 which allows the court to exclude evidence if its probative value is, among other factors, substantially outweighed by the danger of unfair prejudice or the misleading of the jury. See *United States* v. *Tom*, 640 F. 2d 1037 (9th Cir. 1981). And, of course, the court may always require a good faith showing on the part of counsel as suggested in *Gustafson* and *Harper*.

We think the state was entitled to challenge by cross-examination the appellant's testimony that he had never been involved before in a drug transaction. Appellant does not argue that the question was asked in bad faith and we see nothing in the record to so indicate.

Affirmed.