Michael Alan CLARK *v.* STATE of Arkansas

CA CR 88-69                    764 S.W.2d 458

Court of Appeals of Arkansas
Division II
Opinion delivered February 1, 1989

*Larry J. Steele*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y

Gen., for appellee.

JAMES R. COOPER, Judge. The appellant was tried by a jury and convicted of two counts of manslaughter, one count of battery in the second degree, and one count of driving while intoxicated, first offense. He was sentenced to three years in the Arkansas Department of Correction on each manslaughter charge, one year for the second degree battery, and one year for driving while intoxicated. The trial court ordered that the battery and DWI sentences be served concurrently with the two manslaughter sentences for a total of six years.

The record reveals that on the morning of March 12, 1987, on Highway 49 south of Brookland, the appellant's car collided head-on with a car driven by Lucille Kious. Cynthia Ann Finley and two children, Kristen McGown and Cameron Finley, were passengers in Ms. Kious's 1965 Mustang. Both Ms. Kious and Ms. Finley were killed in the accident and both children were injured; Cameron was critically injured and Kristen was less seriously injured.

The appellant was also injured and he was transported to St. Bernard's Hospital in Jonesboro, where blood was drawn from him to test his blood alcohol level. The results reflected that the appellant's blood alcohol level was .20.

The appellant was first tried by a jury in August 1987 on the two counts of manslaughter, but the jury was unable to reach a verdict and a mistrial was declared. The appellant brings this appeal from his second trial, which resulted in the convictions.

The appellant first makes several arguments concerning the information charging him with the offenses. The appellant asserts that the court erred in denying his motion to dismiss because the information failed to establish probable cause, in that the circuit clerk issuing the arrest warrant did not make a determination of probable cause, and because no probable cause hearing was held until after his first trial. We concur with the appellant's assertion that there were irregularities in the clerk's issuance of the arrest warrant, *see Daley* v. *State*, 20 Ark. App. 127, 725 S.W.2d 574 (1987); however, an illegal arrest is not a bar to prosecution nor a defense to a valid conviction. *Lamb* v. *State*, 21 Ark. App. 111, 730 S.W.2d 252 (1987). As we stated in

*Pipes* v. *State*, 22 Ark. App. 235, 738 S.W.2d 423 (1987):

> An invalid arrest may call for the suppression of a confession or other evidence, but it does not entitle the defendant to be discharged from the responsibility for the offense. Illegal arrest, standing alone, does not void a subsequent conviction.

22 Ark. App. at 238 (citations omitted). In the present case the appellant has only asked that the trial court dismiss the charges, relief to which he is not entitled, and he did not request the suppression of any evidence or a confession.

At the appellant's first trial, he was tried only on the two manslaughter charges. After the mistrial, the State amended the information to include two counts of battery and one count of DWI. Citing Ark. R. Crim. P. 23.1, the appellant contends that the State's failure to join the battery and DWI offenses in the first trial barred the State from proceeding against him on those charges in his second trial. However, at trial the basis of the appellant's objection to the amended information was that it punished him for exercising his right to a jury trial. In overruling the appellant's motion to dismiss, the trial court based its decision on the fact that the statute of limitations had not run.

An argument for reversal will not be considered in the absence of an appropriate objection in the trial court. *Fretwell* v. *State*, 289 Ark. 91, 708 S.W.2d 630 (1986); *Dillard* v. *State*, 20 Ark. App. 35, 723 S.W.2d 373 (1987). The objection must be timely, affording the trial court an opportunity to correct the asserted error. *Tosh* v. *State*, 278 Ark. 377, 646 S.W.2d 6 (1983). The objection must be clear and specific, allowing the trial court a fair opportunity to discern and consider the argument. *Horn* v. *State*, 282 Ark. 75, 665 S.W.2d 880 (1984). Furthermore, the grounds for objection cannot be changed on appeal. *Halfacre* v. *State*, 290 Ark. 312, 718 S.W.2d 945 (1986). Therefore, we will not address the appellant's argument.

The appellant's second argument concerns the blood test he was given at the hospital. It is the appellant's contention that he was not notified of his right to have an additional test in accordance with Ark. Code Ann. § 5-65-204(e) (1987), and that the results of the test were not converted to the form used in Ark.

Code Ann. § 5-65-103(b).

Section 5-65-204(e) provides that a person tested at the direction of a law enforcement officer for blood alcohol levels may request an additional chemical test. Furthermore, the person tested is to be advised of his right to an additional test and the failure to so advise precludes admission of the test results into evidence. *See Whaley* v. *State*, 11 Ark. App. 249, 669 S.W.2d 502 (1984). It is not disputed that the appellant was not advised of his right to an additional test.

■ We find that under the facts and circumstances of this case it was not necessary for the appellant to be advised of his right to an additional test. The implied consent statute, Ark. Code Ann. § 5-65-202, provides in part:

> (b) Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn the consent provided by subsection (a) of this section, and the test shall be administered subject to the provisions of § 5-65-203.

Requiring that a person be advised of his right to an additional test, under the circumstances outlined in § 5-65-202 would render that section meaningless. It is clear that a person incapable of refusing or consenting to being tested for blood alcohol levels need not be advised of his right to additional tests, because such a literal application of § 5-65-204(e) would lead to absurd consequences. *See Dollar* v. *State*, 287 Ark. 61, 697 S.W.2d 868 (1985).

The evidence at trial shows that the appellant was incapable of refusing or consenting to a blood test. Hershel Eaton, a trooper with the Arkansas State Police, was at the scene of the accident. He testified that the appellant was in "pretty bad shape" and that he was taken to the emergency room at St. Bernard's by ambulance. He stated that he did not advise the appellant of his right to an additional test at the scene of the accident because the appellant was unconscious. The ambulance operator, Toby Emerson, stated that on the way to the hospital, the appellant was belligerent and uncooperative. He also stated that Eaton had advised him that a blood alcohol test was being requested. Leah Coleman, the chemistry section chief at St. Bernard's, drew the

blood from the appellant for the test. She stated that the appellant was crying out, aggravated, and "real upset." Officer Eaton did not arrive at the hospital until after the blood had been drawn. Clearly, under these facts, any attempt to advise the appellant of his right to an additional test would have been fruitless and we therefore hold that it was not necessary.

The appellant's argument that the blood test was not reported in conformity with Ark. Code Ann. § 5-65-103(b) is also without merit. Leah Coleman testified that the appellant had 221 milligrams of alcohol in each deciliter of blood. It is the appellant's contention that she should have stated the blood alcohol level as a percentage.

Section 5-65-103(b) states that it is unlawful for a person to operate a motor vehicle if at that time there was one-tenth of one percent (0.10%) or more by weight of alcohol in the person's blood. However, § 5-65-204(a) states that percent by weight of alcohol in the blood shall be based upon milligrams of alcohol per one hundred (100) cubic centimeters of blood. Leah Coleman's testimony was plainly in compliance with § 5-65-204(a). Furthermore, she also stated that it was a .2 blood alcohol level.

The appellant's third argument attacks the qualifications and testimony of the State's expert witness, Dr. Larry Williams. We find no error.

The appellant first asserts that, because Dr. Williams's degree is in sociology rather than physics or engineering, he was not qualified to testify about his reconstruction of the accident. It is well established that the determination of an expert's qualifications as a witness is within the sound discretion of the trial court and, absent an abuse of discretion, we do not reverse its decision. *Smith* v. *State*, 258 Ark. 601, 528 S.W.2d 389 (1975); *Harper* v. *State*, 7 Ark. App. 28, 643 S.W.2d 585 (1982).

At the time of the trial Dr. Williams was the Dean of Continuing Education at Arkansas State University and was the chairman of the Law Enforcement Standards and Training Commission in Arkansas. He stated that he became involved in traffic enforcement in 1976 when the university was involved with federal grants for training law enforcement officers. He stated

that there is no college or university that offers a degree in accident reconstruction but that experts get their experience and training through seminars, conferences, and workshops. Dr. Williams then listed eight different seminars he had attended offered by various universities and law enforcement agencies. He then stated that he had been qualified as an expert in accident reconstruction in several Arkansas courts and in the federal courts of both Arkansas and Texas. We find no abuse of discretion in the trial court's allowing Dr. Williams to testify as an expert.

Dr. Williams stated at trial that it was his opinion that the head-on collision was caused by the appellant's car crossing the center line. The appellant argues that the testimony should not have been admitted because it was based on photographs of the two cars after they had been removed from the scene of the accident. Essentially, the appellant is arguing that Dr. Williams's testimony was based on photographs which, the appellant contends, were themselves inadmissible.

First, we note that according to Dr. Williams's testimony, he based his opinion not only on the disputed photographs, but also on discussions he had with Trooper Hershel Eaton, examination of the accident scene, and photographs of the cars taken at the scene of the accident. Dr. Williams also explained how the cars had changed by being moved and he pointed out specifically which photographs depicted the cars after they were moved. Secondly, Ark. R. Evid. 703 provides that an expert may base his opinion on facts or data inadmissible in evidence if of a type reasonably relied upon by experts in the particular field. *Surridge* v. *State*, 279 Ark. 183, 650 S.W.2d 561 (1983). Common sense tells us that most experts in accident reconstruction must rely on the type of data and information relied upon by Dr. Williams for the simple reason that rarely is an accident reconstruction expert on the scene when the accident occurs. Lastly, the factual underpinnings of Dr. Williams's opinion were revealed to the jury and were subject to cross-examination, *see Morris* v. *State*, 21 Ark. App. 228, 731 S.W.2d 230 (1987), and the appellant's arguments go to the credibility of Dr. Williams's testimony rather than its admissibility. We find that the trial court did not err in allowing Dr. Williams to testify using the photographs.

The appellant next argues that the trial court erred in denying a motion to limit testimony concerning the appellant's driving prior to the accident. Thomas and Theresa Davis testified that they saw the appellant shortly before the accident. Thomas Davis stated that he first saw the appellant's car approaching his car from the rear and that it was weaving; the appellant's car passed him; and when the appellant was around him, the appellant's car ran off the road onto the shoulder and then crossed the lane and went over the center line. He stated that the appellant almost hit a bridge and then crossed the center line again. He stated further that he saw the two cars collide and he did not see the Mustang (Kious's car) cross the center line. On cross-examination, Thomas Davis stated that the bridge that the appellant narrowly missed hitting was about one-fourth mile from the accident, and that the appellant had passed him approximately three to five minutes before the accident. Theresa Davis's testimony was essentially the same except she estimated that the appellant passed them five to ten minutes before the accident occurred.

In making his argument, the appellant relies on the case of *Miller* v. *Tipton*, 272 Ark. 1, 611 S.W.2d 764 (1981). We do not find that case to be controlling. That case was a civil case that involved damages arising from an automobile accident. Miller was stopped at a red light, with his car protruding about six feet into the intersection when his car was struck by the appellee's car. Miller argued on appeal that the trial court erred in excluding a witness's testimony that, prior to the accident, the appellee was "going like a bat out of hell." The Arkansas Supreme Court stated that the testimony was speculative and not helpful to the jury.

In the present case, the appellant defended himself with the contention that it was not his car that crossed the center line, but that Kious had attempted to pass another car and had crossed into his lane of traffic. Therefore, the fact that the appellant was seen within minutes of the accident weaving and crossing the center line was highly relevant. Furthermore, the Davis's testimony was an objective statement of the facts, not a subjective opinion of driving as was the proffered statement in *Miller*. Whatever prejudicial effect the testimony might have had did not so clearly outweigh its probative value as to enable us to say that

the trial judge abused his discretion in admitting the testimony into evidence. *Johnson* v. *State*, 288 Ark. 101, 702 S.W.2d 2 (1986); Ark. R. Evid. 403.

The appellant's last argument is that the trial court erred in refusing to grant a continuance because the State failed to provide copies of some photographs prior to trial. We find no error.

The State introduced four pictures of the accident scene at the first trial. The appellant was allowed to examine the photographs prior to their use. When the appellant requested copies of the pictures, he was informed by the State that it had gotten the pictures from the local newspaper. The appellant then went to the newspaper and discovered that there were 48 pictures of the accident scene. The appellant ordered several pictures that he received on September 30, 1987. On October 3, the trial court denied the appellant's motion for a continuance and the trial was held on October 26. The appellant contends that the trial court should have granted a continuance because the State had not complied with discovery.

Rule 17.1 of the Arkansas Rules of Criminal Procedure provides that, when a timely request is made, the prosecuting attorney has a duty to disclose certain information to defense counsel. This duty of disclosure has been interpreted as requiring that the defendant have the *opportunity* to discover the State's evidence prior to trial, *Renton* v. *State*, 274 Ark. 87, 622 S.W.2d 171 (1981), in order to have sufficient time to allow him to make beneficial use of it. *Williamson* v. *State*, 263 Ark. 401, 565 S.W.2d 415 (1978); *Terry* v. *State*, 9 Ark. App. 38, 652 S.W.2d 634 (1983). We find no abuse of discretion in the trial court's failure to grant a continuance; the appellant knew of the photographs three months before the second trial and had his own copy of the photographs almost three weeks before trial. We think that three weeks was sufficient time to allow the defense to make beneficial use of the photographs.

We find no error in any of the points raised by the appellant and therefore we affirm his convictions.

Affirmed.

CRACRAFT AND MAYFIELD, JJ., agree.