Gregory R. LARIMORE *v.* STATE of Arkansas

CR 93-799 877 S.W.2d 570

Supreme Court of Arkansas
Opinion delivered May 23, 1994
[Rehearing denied June 27, 1994.]

114

*Daniel G. Ritchey, Bill W. Bristow* and *Kent J. Rubens*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Gregory Larimore, appellant, was convicted of the first degree murder of his wife, June. He was sentenced to life imprisonment. Upon appeal, we reversed and remanded. *Larimore* v. *State*, 309 Ark. 414, 833 S.W.2d 358 (1992). Upon retrial, he was again convicted of first degree murder, but this time was sentenced to twenty-five years in prison. Even though the sentence is less than that required for appellate jurisdiction in this court, we will exercise jurisdiction because this is a subsequent appeal of a case initially decided by this court. Ark. Sup. Ct. R. 1-2(a)(11).

June Larimore's corpse was found in the parties' home at 11:30 the morning of January 11, 1990. She had been stabbed in

the face, torso, arms, hands, and legs a total of one hundred thirty-four times, apparently with a knife that was wiped clean and replaced in a cutlery block in the kitchen. The body was nude except for panties which were rolled down around the hips in a manner which would be consistent with dragging the body by the hands from the bed to the floor. There was a deep stab wound in the pelvic area, but no corresponding cut in the panties. Samples from her vagina did not indicate that a sexual attack had occurred. When the body was found, a nearby outside door was unlocked, the stereo sound system was still on, her watch and rings were still on, and her open purse containing cash appeared not to have been disturbed. There was evidence that a violent struggle had occurred in the bedroom, and the bathroom sink appeared to have been wiped off, but the rest of the home appeared to be undisturbed except for the telephones. A telephone in the living room and a cordless phone in the hallway were unplugged, and the cord to a phone in the bedroom was severed. The sheets on the bed were soaked with blood, and some of appellant's clothes were found under the corpse. A fair inference from the evidence is that anger was likely the motivating force for the murder, rather than a sexual crime or a crime such as robbery or burglary. There was no direct evidence linking appellant to the murder.

Appellant told the police that he had fallen asleep on a couch the night before, woke up at 6:00 a.m., and left for work at the family farm supply business at 6:30 on the morning the body was found. In another statement, he said he had awakened around 3:00 a.m. and gotten in bed with June, where he slept until 6:00. Another version was that he woke up at 3:00, but decided not to disturb June by getting into the bed. He said that when he left home at 6:30, June was alive and asleep, wearing only a pair of panties. It is undisputed that appellant reported to work at the family business shortly after 6:45 a.m., that he had no blood on him, and that his appearance was normal.

A critical element in the State's circumstantial evidence case was proof that the murder took place before appellant went to work. The State proved this element with the testimony of a forensic pathologist, Dr. Fahmy Malak, the former state medical examiner, who testified that the victim died as early as 1:00 or 2:00 o'clock of the morning the body was found. In his first two

assignments of error, appellant argues that the circuit judge erred in denying motions for a directed verdict when a crucial element of the case, the time of death, rested upon a theory of "junk science," thereby depriving appellant of due process of law.

■■ Appellant's challenge to the sufficiency of the evidence, which is based upon the purported unreliability of Dr. Malak's testimony that the body temperature of stabbing victims will rise for a short while after they lose large amounts of blood, is barred by the doctrine of the law of the case since appellant made a similar argument in his previous appeal. The doctrine of law of the case prevents an issue raised and decided in a first appeal from being raised in a subsequent appeal, unless the evidence materially differs between the appeals. *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992); *Findley* v. *State*, 307 Ark. 53, 818 S.W.2d 242 (1991). In his first appeal, appellant argued that he should have been granted a directed verdict because the State's case was based in part on Dr. Malak's testimony, and he contended that this testimony was "contrary to the daily experience of common life and inconsistent with well known physical laws." *See Larimore* v. *State*, 309 Ark. 414, 417, 833 S.W.2d 358, 359 (1992); *see also Allread* v. *Mills*, 211 Ark. 99, 199 S.W.2d 571 (1947). We affirmed the trial court on this point and stated that, although the theory may seem implausible and may be against the "decided weight of medical opinion," it was not so clearly contrary to the laws of nature as to be inherently impossible. *Larimore*, 309 Ark. at 418, 833 S.W.2d at 359. The case was reversed on other grounds.

The first two points of appeal do contain sub-points which are not barred by the law of the case doctrine. In the first of these, appellant contends that the trial court erred in refusing to allow him to impeach Dr. Malak's credibility by bringing up other rulings that he made as medical examiner. Appellant sought to impeach Dr. Malak by questioning him about the following findings he had made: (1) marijuana-induced sleep as an explanation of the reason two teenagers were lying on a railroad track, did not hear a train coming, and were run over; (2) a conclusion of death by suicide when a victim was shot three to five times in the chest; and (3) the opinion that a fourteen-year-old girl had broken her neck from stepping off a four-to-six inch high porch. The trial court refused to allow the impeachment, stating that

these findings had nothing to do with the issues in the present case, but told appellant that he could cross-examine Dr. Malak on anything that was part of the basis of his opinion regarding the body temperature of victims who have lost large amounts of blood.

Rule 611 of the Arkansas Rules of Evidence provides in pertinent part:

> (b) Scope of Cross-Examination. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

A.R.E. Rule 611(b).

■■ A trial court has wide latitude to impose reasonable limits on cross-examination based upon concerns about confusion of issues or interrogation that is only marginally relevant. *Bowden* v. *State*, 310 Ark. 303, 783 S.W.2d 842 (1990). While the proposed cross-examination might have had the effect of diminishing Dr. Malak's credibility, his findings in the prior cases were not based upon his theory on the body temperature of stabbing victims; therefore, they were not consequential to a determination of whether his theory was to be believed in this trial. For this reason, we cannot say the trial court abused its discretion in imposing this restriction. *See Bowden*, 301 Ark. at 310, 783 S.W.2d at 845. We will not disturb this discretion upon review in the absence of a showing of abuse. *Warren* v. *State*, 314 Ark. 192, 862 S.W.2d 222 (1993); *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992).

■ Appellant also argues that the original medical examiner's report was altered. The name of the victim on the original document was covered with "white out" and the name "Demetria" was changed to "Laura." The victim's full name was Demetria June Larimore. It also appears that there was once a time of death entered on the report, but someone wrote "time unknown" over white-out. These were factors to be considered by the jury in determining the credibility of Dr. Malak and his reports. Credibility is for a jury, not an appellate court, to determine. *Moore* v. *State*, 315 Ark. 131, 864 S.W.2d 863 (1993).

 In his next point of appeal appellant argues that the trial court erred in permitting a witness to give his opinion about the innocence of a third person who at one time was a suspect in the murder. The ruling was in error, but appellant suffered no prejudice as a result of the ruling, and we will not reverse for harmless non-Constitutional error. The facts necessary to understand the issue are as follows. In attempting to create a reasonable doubt appellant sought to show that the police investigation of this case was flawed and that another person had been seen near the Larimore home the morning of the murder. In order to discredit the police on cross-examination, appellant asked a number of questions about mistakes in the gathering and preservation of the evidence. After persistent questioning about investigative errors, appellant asked former Blytheville Police Chief Larry Christie about reports that there was a stranger in the neighborhood the morning of the murder. Chief Christie admitted that there were reports that a young man, later identified as Mark Lockhart, had been seen in the carport of the Larimore home of the morning of January 11, 1990. He testified that neighbors had been shown photographs, but they could not identify the person they had seen, and that a hair sample had been taken from Mark Lockhart. Apparently hoping to have planted the idea that Lockhart might have committed the murder, appellant stopped cross-examination.

On redirect, Chief Christie testified that some ten months after the homicide he found a misplaced envelope of floor sweepings from the Larimore home and directed that hair samples be taken from various police officers who had been in the home. He also directed that a hair sample be taken from Lockhart. He testified that he was aware of a report from the Arkansas State Crime Lab which stated that the hair sample found in appellant's bedroom belonged to a Blytheville police officer. He said they were unable to talk to Lockhart since he is hearing and speech impaired. At this point, the prosecutor asked Chief Christie if he had determined that Lockhart was not involved in the crime. Appellant objected, and a conference was held outside the hearing of the jury. The court overruled the objection, stating that appellant had opened the door to this testimony by insinuating that Lockhart had committed the crime and that the police had not done their job. In addition, the court ruled that the State would be permitted to "fight fire with fire" by offering the answer.

The Chief's response is abstracted as follows:

> We were able to identify the person that was seen near the area of the homicide. It would have been proper police procedure to follow through and try to find out where that person was at that time. I am satisfied that it was not the person who committed the crime.

■ Appellant contends that Chief Christie's testimony was inadmissible opinion testimony. The fact that testimony may be an opinion does not of itself render it inadmissible. The Arkansas Rules of Evidence allow lay witnesses to offer opinions which are rationally based upon their perceptions. *See* A.R.E. Rule 703. However, a witness is generally not allowed to give an opinion as to the guilt or innocence of a party as this is a matter reserved for the jury. *See Foreman* v. *State*, 198 Ark. 888, 132 S.W.2d 13 (1939); *Christian* v. *State*, 6 Ark. App. 138, 639 S.W.2d 78 (1982). In the oral argument of this case, the State conceded that, according to the general rule, the witness should not have been allowed to give his opinion about the innocence of Lockhart. Even so, the State contends that the ruling was not error because the trial judge correctly allowed the State to fight fire with fire.

■ We have recognized that otherwise inadmissible testimony may be offered when one party has opened the door for another party to offer it. This is most often permitted when a defendant has been untruthful about a former crime or has brought up otherwise inadmissible character evidence which the State may then rebut. *See Friend* v. *State*, 315 Ark. 143, 865 S.W.2d 275 (1993); *McFadden* v. *State*, 290 Ark. 177, 717 S.W.2d 812 (1986). The rationale behind this rule is articulated in *Walder* v. *United States*, 347 U.S. 62 (1954), in which the defendant, who had been formerly charged with drug dealing but was not tried because that search was illegal, testified that he had never dealt in narcotics. *Id.* at 65. The government rebutted the testimony by bringing up the former charge. The Supreme Court of the United States held that, while such evidence would generally be unconstitutionally inadmissible, "there [was] hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." *Id.*

■ Since *Walder*, we have recognized the propriety of "fighting fire with fire" when one of the parties opens the door with an untruthful statement, introduces inadmissible evidence, or makes an improper closing argument. *See Porter* v. *State*, 308 Ark. 137, 823 S.W.2d 846 (1992); *Wortman* v. *Shipman*, 293 Ark. 253, 737 S.W.2d 438 (1987); *Pursley* v. *Price*, 283 Ark. 33, 670 S.W.2d 448 (1984). But this case does not involve such an act by appellant. The questions asked by appellant's attorney were proper. Appellant offered no false testimony, and his attorney made no improper statements. He offered nothing to justify allowing the State to fight fire with fire, and the ruling cannot be upheld on that basis.

■ A factual inquiry such as "Tell me what you did," clearly would have been proper. Factual questions were asked before the Chief's opinion was elicited. In response to these factual questions, the Chief testified that the police conducted an investigation to determine who might have been in the vicinity of the Larimore home near the time of the murder and learned that Mark Lockhart was seen in the carport area of the Larimore home between 7:30 and 8:00 a.m. He testified that the police took sweepings from the room, and those sweepings contained a hair that was from neither appellant nor the victim. In addition, unidentified fingerprints were found in the house. The police took a sample of Lockhart's hair, but it did not match the hair found in the sweepings, and the police could not question Lockhart because he has "no ability to communicate in any recognized language." He is hearing and speech impaired and apparently unable to either read or write. From the above, it is clear that the jury had before it facts that showed Lockhart was seen near the Larimore home a good while later than the State's proof showed the murder occurred and that a hair sample found at the scene did not match a hair sample from Lockhart. The jury knew that appellant, not Lockhart, was the person charged with the murder. Since appellant opened this line of questioning, and since the jury had facts before it that showed the Chief thought appellant, not Lockhart, committed the crime, the ruling did not substantially affect the evidence, and appellant suffered no prejudice. Error may not be predicated upon a ruling admitting evidence unless a substantial right is affected, and we will not reverse in the absence of prejudice. *See* A.R.E. Rule 103(a); *Daniels* v. *State*, 293 Ark. 422, 739 S.W.2d 135 (1987).

 Appellant contends that the court erred in refusing to allow him to establish his prior history of nonviolence through the testimony of defense witnesses. Peacefulness is a trait that is pertinent to the defense of a murder charge. *See Shelton* v. *State*, 287 Ark. 322, 334, 699 S.W.2d 728, 734 (1985). It is necessary to allow evidence of a defendant's character so that the accused might have a chance to raise a reasonable doubt in the minds of the jury. *Id.* (citing 2 Jack B. Weinstein & Margaret M. Berger, *Weinstein's Evidence* § 404[02] (1984)). However, the type of character evidence which may be offered on direct examination is limited to opinion or reputation evidence. Specific instances of conduct may not be used. *Id.*

 Here, witness Bob Jackson testified that his daughter had dated appellant six or seven years prior to trial, and appellant's attorney sought to ask Jackson if appellant ever had a physical confrontation with his daughter. The trial court correctly sustained the State's objection since the testimony came within the realm of a specific instance of conduct rather than a pertinent trait or a reputation for peacefulness. *See* A.R.E. Rule 404. Later appellant called his sister, Laura Williams, who testified that appellant and the victim had a good marriage and that she had never seen him act violently toward the victim. Later she was asked if her brother had ever acted violently toward anyone, and the trial court sustained the State's objection to the question. Arguably, the question again sought to solicit testimony of a specific act, but the proffer made it clear that appellant sought to ask this witness of her general impression. The ruling was in error, but no prejudice resulted. To obtain reversal, appellant must not only show error, but must demonstrate prejudice. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984). While appellant was not successful in getting all of Williams's testimony about his trait for peacefulness before the jury, he was allowed to put before the jury evidence that he was peaceful toward the victim. Subsequently, appellant's mother, Sara Larimore, testified without objection that, to her knowledge, her son had never been aggressive toward the victim or anyone else. Error in the exclusion of evidence is nonprejudicial where the same evidence has been put properly before the jury for its consideration. *Hall* v. *State*, 286 Ark. 52, 689 S.W.2d 524 (1985). Here, the jury was able to consider positive character evidence regarding appellant's

relationship with the victim as well as with others. Thus, he did not suffer any prejudice from the exclusion of his sister's testimony.

Appellant's final point of appeal is that the trial court erred in granting the State's motion in limine to exclude testimony concerning acts and conduct of Mark Lockhart, who was a possible suspect in the case. Appellant sought to put before the jury evidence that a person other than he committed the murder. This is generally recognized as relevant evidence under fundamental standards. *See United States* v. *Stevens*, 935 F.2d 1380 (3rd Cir. 1991); *United States* v. *Armstrong*, 621 F.2d 951 (9th Cir. 1980); *Smith* v. *State*, 33 Ark. App. 37, 801 S.W.2d 655 (1990). It is often recognized that such evidence as other parties' threats to kill or offer of payment to someone else to commit murder are relevant to prove motive on the part of someone other than the defendant. *See Smith*, 33 Ark. App. at 41, 801 S.W.2d at 658. Such evidence is sometimes called "reverse 404(b)," as it is evidence of other crimes, wrongs, or acts *by a party other than the defendant* which may not be admitted to show that the party acted in conformity with a known character trait, but which may be admitted for other purposes, such as to show motive, opportunity, intent, or identification of *that other party*, thus tending to negate the guilt of the defendant. *See Stevens*, 935 F.2d at 401-02; see also 1A John H. Wigmore, *Evidence in Trials at Common Law* §§ 139, 141, 142 (Chadborn rev. ed. & Supp. 1994).

In the instant case, appellant wanted a neighbor to testify that Mark Lockhart, a young man who had been seen near appellant's home the morning of the murder and who had previously done some yard work for the witness, had been caught entering her home and taking some property on one occasion and had attempted to break into her home on another. Both of these incidents occurred several months before the murder. The State moved in limine to exclude this testimony based on relevancy, and the motion was granted.

Evidence offered under Rule 404(b) of the Arkansas Rules of Evidence must be independently relevant. *See Crutchfield* v. *State*, 25 Ark. App. 227, 763 S.W.2d 94 (1988). Therefore, it must "have a tendency to make the existence of any fact that is of consequence to the determination of the action

more or less probable than it would be without the evidence." A.R.E. Rule 401. Even if the evidence is relevant, it may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." A.R.E. Rule 403; *see also Crutchfield*, 25 Ark. App. at 234, 763 S.W.2d at 97. The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the trial court, which this court will not disturb on appeal absent a showing of manifest abuse. *Jarrett* v. *State*, 310 Ark. 358, 833 S.W.2d 779 (1992). The standard of review is similar for both relevancy determinations and the decision to admit evidence by balancing the probative value against unfair prejudice or confusion of the issues. *See Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990); *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988). Under these standards, the trial court did not abuse its discretion by refusing to admit this testimony.

■■■ The Minnesota Supreme Court provides a helpful guide to the appropriateness of "reverse 404(b)" evidence in *State* v. *Bock*, 39 N.W.2d 887 (Minn. 1949), where it wrote:

> [The defendant should] . . . have the right to show that crimes of a similar nature have been committed by some other person when the acts of such other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of the defendant as the person who committed the crime charged against him.

*Id.* at 892 (citation omitted). Also helpful is the Fifth Circuit's guide for determining relevance and admissibility, which requires that the evidence have "a tendency to negate [the defendant's guilt], and that it [pass] the Rule 403 balancing test." *Stevens*, 935 F.2d at 1405. Similarity and time connections are factors in determining the probativeness of the evidence, which must be weighed against the possibility of confusing the issues and wasting time. Some courts have said that there should be a sufficient nexus between the evidence and the possibility of another person's guilt and that this evidence should do more than create a mere suspicion. *See Cikora* v. *Dugger*, 840 F.2d 893 (11th Cir. 1988); *Williams* v. *State*, 600 N.E.2d 962 (Ind. App. 1992).

Here, the evidence offered was that in the summer or fall of 1989, Mark Lockhart broke into the witness's house and took candy, tools, prescription drugs, and other miscellaneous items, which he gave back when the witness confronted him. On another occasion, this witness observed him walking away from her house after she had heard a noise at her back door and observed the door knob moving. Given the dissimilarity of these incidents with the facts of the instant case, we cannot say that the trial judge abused his discretion by deeming that it was irrelevant or would have possibly confused the issues or wasted time. This case is devoid of any evidence of theft or burglary. The witness who would have testified about Mark Lockhart offered no evidence that he was violent toward her. In fact, her testimony indicates that he did not act violently even when he might have, as he immediately surrendered her property to her as soon as she confronted him and did not try to harm her. Therefore, the trial court did not err in refusing to allow this testimony.

Affirmed.