Kimberly JENKINS *v.* STATE of Arkansas

CA CR 97-98                                          959 S.W.2d 57

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered December 22, 1997

*Jeff Rosenzweig* and *Woodson D. Walker*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Kimberly Jenkins was convicted by a jury of felony theft by receiving based upon her possession of three "slides" for a slide bracelet. She was thereafter sentenced to pay a fine of $4,275.00. Ms. Jenkins now appeals, raising four points for reversal.

Ms. Jenkins's first argument is that the evidence was insufficient to support her conviction. Next, she contends that, if we find sufficient evidence to support her conviction, the conviction should be reduced to a misdemeanor. Third, Ms. Jenkins asserts that the prosecuting attorney made improper arguments to the jury such that reversal is mandated. Finally, Ms. Jenkins argues that the trial court erred in refusing to grant a mistrial due to improper impeachment of Ms. Jenkins during the trial. We affirm.

■ When an appellant challenges the sufficiency of the evidence, we review the sufficiency argument prior to a review of any alleged trial errors. *Lukach v. State*, 310 Ark. 119, 835 S.W.2d 852 (1992). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Lukach v. State, supra.* In determining the sufficiency of the evidence, we review the proof in the light most favorable to the appellee, considering only the evidence that tends to support the verdict. *Brown v. State*, 309 Ark. 503, 832 S.W.2d 477 (1992).

At the trial in the instant case, Officer Chip Stokes testified on behalf of the State. Officer Stokes stated that he responded to a call from a jewelry store on December 12, 1995. He was informed by the jewelry store owner that Ms. Jenkins was present and was in possession of stolen jewelry. Upon his arrival, Officer Stokes asked Ms. Jenkins how she came into possession of stolen jewelry, and she told him that a friend had purchased it for her from a pawn shop in Dallas, Texas. Ms. Jenkins was then arrested, and according to Officer Stokes she was very cooperative and did not protest. Officer Stokes testified that Ms. Jenkins possessed

three "slides" that were stolen and that the slides were valued at $275, $275, and $425.

John David Hawks, part owner of JWC Jewelers, testified next. He stated that, on November 30, 1995, Ms. Jenkins came into his store and was interested in buying some jewelry. She then picked out a bracelet and one slide, and put them on layaway. A few days later, Ms. Jenkins entered the store with two "nice look-ing slides" and told Mr. Hawks to put those slides on the bracelet instead of the slide that she had originally selected. She explained that she received the two slides from her boyfriend in Texas. Mr. Hawks thought the slides looked familiar, and after checking his inventory he discovered that they had been stolen from the store. A few days later, Ms. Jenkins brought in five more slides and told Mr. Hawks to add them to her bracelet. He told her that he would do so, kept the slides, and called Dayer's Jewelry and found out that one of these slides had been stolen from that store. When Ms. Jenkins returned to pick up her slide bracelet, both jewelry store owners and the police were waiting for her. According to Mr. Hawks, the two slides that had been stolen from his store retailed for $275 and $270.

Danny Cook, also part owner of JWC Jewelers, testified that he recognized the jewelry on the bracelet as that which had been stolen from the store. He asked Ms. Jenkins whether she had been in Dayer's, and she replied that she had not. According to Mr. Cook, when they accused Ms. Jenkins of theft she sat down and stated, "What happens now," and acted as if a "bombshell dropped."

Tommy Dayer, owner of Dayer's Jewelry, testified that on or about November 30, 1995, Ms. Jenkins came into his store and wanted to look at some slides. One of these slides was eventually discovered missing, and Mr. Dayer testified that this was one of the slides that Ms. Jenkins had given to Mr. Hawks for attachment to her bracelet. The slide was admitted into evidence, and Mr. Dayer identified it as being the slide that was found to be stolen soon after Ms. Jenkins's visit to his store. He stated that the slide retailed for $400.

Ms. Jenkins testified on her own behalf and did not deny that the three slides at issue had been stolen. However, she denied stealing them or having any knowledge that they had been stolen. Rather, she indicated that the slides were a Christmas gift from a friend in Dallas, Texas. She acknowledged being at both JWC Jewelers and Dayer's Jewelers, but said she did not take any of the slides. Ms. Jenkins admitted that in October 1994 she pleaded guilty to misdemeanor shoplifting. Subsequent to that time, she acquired a teaching job in Conway and held that job through the date of her trial.

Ms. Jenkins's first point on appeal is a challenge to the sufficiency of the evidence. Arkansas Code Annotated section 5-36-106(a)(Repl. 1993) defines theft by receiving, and provides:

> A person commits the offense of theft by receiving if he receives, retains, or disposes of stolen property of another person, knowing that it was stolen or having good reason to believe it was stolen.

Ms. Jenkins submits that, although she was admittedly in possession of stolen property, there was no substantial evidence that she knew or had good reason to know that the property was stolen. She points out that no one saw her take anything from either store, and also points to her testimony that the jewelry was received from her boyfriend as a Christmas present. Ms. Jenkins asserts that it would be totally illogical to buy a bracelet from a jewelry store and then steal slides from the same store and attempt to have them attach the stolen slides. Under these facts, she asserts her conviction was based on speculation and conjecture.

We find substantial evidence to support Ms. Jenkins's conviction. There was evidence presented to show that Ms. Jenkins viewed the stolen slides prior to the time that they were discovered missing. When confronted at JWC Jewelers, there was evidence that Ms. Jenkins denied ever being in Dayer's store, when in fact she had been and later so admitted. The jury was entitled to disbelieve her story that a boyfriend from Dallas gave her the slides as a Christmas gift, particularly since she received the slides in early December. Although Ms. Jenkins denied stealing the slides or having knowledge that they were stolen, the jury was

not required to believe this testimony, particularly since Ms. Jenkins was the person most interested in the outcome of the trial. *See Moore v. State*, 315 Ark. App. 131, 864 S.W.2d 863 (1993). From all the circumstances, there was ample evidence from which the jury could reasonably conclude that Ms. Jenkins was in possession of property that she knew to be stolen.

Ms. Jenkins next contends that her conviction should at least be reduced to a misdemeanor. She notes that the information charged her with possession of over $500 worth of stolen property, and that the jury was instructed to convict her of a felony if the stolen goods exceeded $200 in value. In 1995, our legislature increased the minimum threshold for felony theft from $200 to $500. *See* Ark. Code Ann. § 5-36-103(b)(2)(A) (1995 Supp.) However, the legislature did not change the minimum felony threshold for theft by receiving. Nevertheless, Ms. Jenkins submits that, although not explicitly stated by the 1995 amendments, the felony threshold for theft by receiving was also increased due to the language of Ark. Code Ann. § 5-36-102(a)(2) (Repl. 1993), which provides:

> A criminal charge of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the indictment or information, subject only to the power of the court to ensure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

Ms. Jenkins argues that the jury should have been instructed that the offense was a misdemeanor if the value was $500 or less, and further submits that there was insufficient evidence to prove that the aggregate value of the three slides exceeded $500.

From the abstract presented, it is evident that there was no objection made to the jury instruction now at issue. It is well settled that an argument for reversal will not be considered in the absence of a timely objection. *Pharo v. State*, 26 Ark. App. 268, 764 S.W.2d 458 (1989). Ms. Jenkins contends that no objection was necessary because this was a "structural error" going to the

heart of the offense. However, she gives no authority for this proposition. We will not consider assignments of error which are unsupported by convincing argument or citation to authority. *Womack v. State*, 36 Ark. App. 133, 819 S.W.2d 306 (1991). As a result of Ms. Jenkins's failure to object, her second point on appeal has not been preserved for our review.

Ms. Jenkins's next contention is that the prosecuting attorney engaged in improper argument that warrants reversal. Ms. Jenkins essentially contends that the prosecutor repeatedly indicated to the jury that Ms. Jenkins was not presumed to be innocent because she was unable to give an adequate explanation for being in possession of stolen property. Ms. Jenkins acknowledges that no objection was made during the prosecutor's argument, but asserts that none was necessary to preserve this point because the comments were so egregious that the trial court committed plain error in refusing to correct the statements or admonish the jury.

We need not address Ms. Jenkins's argument regarding various comments made during the prosecutor's closing argument. This court has held that there is no "plain error" rule, but instead has consistently held that the burden of obtaining a ruling is on the movant, and unresolved questions and objections are waived and may not be relied upon on appeal. *Aaron v. State*, 319 Ark. 320, 891 S.W.2d 364 (1995). Ms. Jenkins cites *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), for the proposition that it is incumbent upon the trial court to intervene, even without an objection, when a prosecutor makes improper comments to the jury. However, in dicta contained in that opinion, the supreme court merely suggested that the trial court may have a duty to correct such an error through an admonition to the jury or granting of a mistrial. The supreme court noted that such an exception to the contemporary objection rule "is a mere possibility, for it has not yet occurred in any case." *Wicks v. State*, 270 Ark. at 786, 606 S.W.2d at 369. We decline to extend this hypothetical exception to the general rule that an objection is necessary to preserve a point for review, and because no objection was made to the prosecutor's remarks in the instant case, we fail to reach the merits of Ms. Jenkins's third contention.

Ms. Jenkins's remaining assertion is that the trial court erred in refusing to grant a mistrial due to improper impeachment. On cross-examination, the prosecutor asked Ms. Jenkins whether she informed the Conway Public School System of her misdemeanor theft conviction when she applied for a job as a teacher. Ms. Jenkins replied that she did not disclose that information because her employer did not ask about it. After an objection by the defense, the prosecution stated that it was trying to attack Ms. Jenkins' credibility by showing that she misled her employer in order to get a job. Then, the defense moved for a mistrial and the trial court denied the motion. Ms. Jenkins now argues that the trial court's ruling was erroneous because the elicited testimony prejudiced the jury to the extent that she was denied a fair trial. Ms. Jenkins notes that the prosecution presented no proof that the Conway School District even asked about any misdemeanor convictions prior to hiring her.

■ We find no error in allowing the State to ask the question in dispute. On direct examination, Ms. Jenkins admitted that she had been convicted of misdemeanor shoplifting prior to gaining employment as a school teacher. The State then asked her on cross-examination whether she informed the school district about the conviction. This question was not objectionable because Ms. Jenkins "opened the door" to the question by discussing it on direct examination. See Larimore v. State, 317 Ark. 111, 877 S.W.2d 570 (1994). While we do not know why Ms. Jenkins testified on direct examination about her earlier misdemeanor, it is conceivable that she wanted to display her candor before the court to bolster her credibility. The State could properly then cross-examine her about this testimony and inquire as to whether her candor extended to also telling her employer about the conviction when she was applying for her teaching job. Moreover, any possible prejudice was diminished by the fact that Ms. Jenkins replied that she did not inform the school district about her misdemeanor conviction because the question was not asked when she applied for employment.

■ A mistrial is an extreme remedy to be used only when it is determined that something has occurred that will undoubtedly deprive a party of a fair trial. Foreman v. State, 328 Ark. 583,

945 S.W.2d 926 (1997). A trial court has wide discretion when it comes to a motion for a mistrial. *Id.* In the instant case, we find that the trial court did not abuse its discretion in refusing to find that the contested line of questioning by the prosecution was improper or prejudiced Ms. Jenkins to such an extent that the granting of a mistrial was necessary.

Affirmed.

PITTMAN, JENNINGS, NEAL, and MEADS, JJ., agree.

JUDITH ROGERS, Judge, dissenting. As her fourth issue on appeal, appellant contends that the trial court erred in refusing to grant a mistrial based on an improper impeachment tactic employed by the deputy prosecutor. My disagreement with the majority view lies in its failure to acknowledge this clear and prejudicial error and in its attempt to excuse it on the basis of invited error.

On direct examination, appellant admitted that she had previously pled guilty to the misdemeanor offense of theft of property, or shoplifting. During the State's cross-examination of appellant, the following transpired:

> DEPUTY PROSECUTOR: And is it true — is it not true that you were convicted of the crime of theft of property in Pulaski County on October 18, 1994?
>
> APPELLANT: I already said yes when Mr. Davis brought it out.
>
> DEPUTY PROSECUTOR: Did you — did you provide this information to [the] Conway Public School System when you applied for your job?
>
> APPELLANT: No, I didn't. Everyone has skele-tons in a closet and things that they don't want to come out, and Conway Public Schools didn't ask me about it.
>
> DEPUTY PROSECUTOR: Conway Public Schools didn't ask you about it? Okay. So there wasn't anything on your application for employment here —
> DEFENSE COUNSEL: Your honor, that has nothing to do with this— that's irrelevant. We're talking about a misdemeanor.
>
> THE COURT: Where are you going counselor?

DEPUTY PROSECUTOR: I'm questioning the credibility of this witness, your honor, that she would have filled out an application for employment and let mis—misled her employer as to her prior convictions for crime.

DEFENSE COUNSEL: And that's garbage, your Honor. She's allowed to impeach with a prior conviction only to the tune of asking her. The fact it's a misdemeanor is not required on any application, and that's just trying to prejudice the jury with garbage, and I — I resent it, and I think it's improper. I am going to ask for a mistrial because of it. She knows it's improper.

DEPUTY PROSECUTOR: State would object, your honor. There are no such grounds for a mistrial at this point.

THE COURT: I wasn't even considering that. I was considering whether or not this is something that the jury could consider. I think you have asked the question, the witness has answered it, and I think you need to move on.

DEPUTY PROSECUTOR: Okay. My last question was did she provide—I'm not sure what her answer was now. Did you provide this information to the Conway Public School System?

DEFENSE COUNSEL: I'm objecting, your honor. That's not required to be asked. There's no requirement that that be listed on a misdemeanor, so it's an improper question.

THE COURT: I think the witness has answered it. There was no requirement.

By the deputy prosecutor's own admission, this line of inquiry was pursued in an effort to impeach appellant's credibility by implying that she had misled her employer by failing to divulge her previous conviction on her application for employment. Questions asked a defendant about his or her previous misconduct for the purpose of attacking credibility are governed by Rule 608(b) of the Arkansas Rules of Evidence. It provides:

> Specific instances of the conduct of a witness for the purpose of attacking or supporting his credibility . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning his character for truthfulness or untruthfulness.

In *Gustafson v. State*, 267 Ark. 278, 590 S.W.2d 853 (1979), the supreme court observed that this rule marked a change in Arkansas law in that, before it was adopted, questioning was allowed concerning most any kind of misconduct. It was held that the rule was intended to restrict the use of such evidence, and recognizing the "highly prejudicial" nature of such information, the court set out the following three-part test governing its application: (1) the question must be asked in good faith; (2) the probative value must outweigh its prejudicial effect; and (3) the prior conduct must relate to the witness's truthfulness. The latter prong of the test has since been taken to mean a lack of veracity rather than dishonesty in general. *Rhodes v. State*, 276 Ark. 203, 634 S.W.2d 107 (1982); *Urquhart v. State*, 30 Ark. App. 63, 782 S.W.2d 591 (1990).

Applying the test here, while it can be said that the prosecution's question, implying deception, related to the issue of truthfulness, it can hardly be said that the first and second prongs of the test were satisfied. Good faith was utterly lacking since the record demonstrates that appellant was not asked to divulge this information. And, because she was not asked to disclose this conviction, her failure to do so does not reflect poorly on her capacity for truthfulness; therefore, the inquiry was wholly without probative value. The prosecutor's effort to impeach appellant's credibility by insinuating that she had deceived her employer was thus absolutely improper.

The prejudicial effect of this error cannot be minimized. The mere asking of this improper question elicited a prejudicial response from appellant about hiding "skeletons in a closet." The question should never have been asked, and appellant should not have been placed in the position of defending her actions in response to an improper question. And, it cannot be said with confidence that the jury was not left with the impression that appellant had purposely hidden this information from her prospective employer, a school district no less, or that the jury did not accept the prosecution's intimation that the conviction should have been disclosed and that the failure to do so was misleading and deceitful. Appellant's credibility was vital to her defense, and it is clear that her credibility suffered as a result of the prosecution's misguided efforts.

Nevertheless, the majority reasons that no harm resulted because of her response that she was not required to divulge this information. However, as indicated above, the prejudice to appellant was palpable. Moreover, our case law recognizes the prejudicial nature of this kind of inquiry and suggests that the prejudicial effect is not necessarily reduced by a negative answer. In *Gustafson, supra,* the court observed:

> We were also mistaken in *Cox* if we left the impression that a negative answer to an improper question results in no prejudicial error. There is no doubt that such a question harms a defendant's case. When it is proper, about a type of misconduct that is relevant, it is allowed only because it is relevant to the determination of the credibility of the defendant. But to say that a negative answer always removes the prejudice in every case goes too far.

*Gustafson v. State,* 267 Ark. at 291, 590 S.W.2d at 860. "The prejudicial effect of such questions is not remedied by the fact that they were answered in the negative. As was made clear in *Gustafson,* 'There is no doubt that such a question harms a defendant's case.'" *Cameron v. State,* 272 Ark. 282, 286, 613 S.W.2d 593, 595 (1981). "When answered negatively, no evidence of misconduct has been produced, but a prejudicial question may have been asked." *Spicer v. State,* 2 Ark. App. 325, 328, 621 S.W.2d 235, 237 (1981). "Since specific acts of misconduct may not be proved by extrinsic evidence, *Gustafson* teaches that a prosecutor hazards a reversal when he asks about prior misconduct and does not get an answer of probative value as to the witness's truthfulness or untruthfulness." *Summerlin v. State,* 7 Ark. App. 10, 14, 643 S.W.2d 582, 585 (1982). Given the inherent potential for prejudice flowing from this type of impeachment, the *Gustafson* court even issued a warning that prosecutors would be well advised to procure a ruling from the trial court prior to launching into this sort of inquiry before a jury. Based on the facts of this case and the foregoing authorities, I believe that the trial court abused its discretion in failing to grant appellant's motion for a mistrial.

Finally, I disagree with the majority's view that appellant somehow "opened the door" to the question by discussing the conviction on direct examination. True, it is generally recognized that otherwise inadmissible testimony may be offered when one

party has opened the door for another party to offer it. *Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994). This is referred to as "fighting fire with fire," and it is permitted when a defendant has been untruthful about a former crime or has brought otherwise inadmissible character evidence which the State may then rebut. *Id.* But this case does not involve such an act by appellant. Under the rules of evidence, appellant was not required to reveal a prior misdemeanor conviction for theft of property; nor could the State have brought it up on cross-examination. Ark. R. Evid. 608; Ark. R. Evid. 609. Her confession of it was thus a fortuitous occurrence for the State. But by admitting it, she said nothing untruthful and made no misrepresentation for the State to rebut. There was simply no fire to be extinguished by her admission, and it makes no sense to conclude that her admission of it provided the State with an opportunity to engage in improper impeachment. In fact, a similar conclusion was reached in *Larimore v. State, supra*, curiously enough the case cited by the majority to support its view.

I respectfully dissent.