Lovella R. THOMAS *v.* STATE of Arkansas

CA CR 04-644                                    214 S.W.3d 863

Court of Appeals of Arkansas
Opinion delivered October 5, 2005

B. *Kevin Holland*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Lovella Thomas was convicted in a jury trial of Abuse of an Adult, a Class B felony, and was sentenced to twenty years' imprisonment and assessed a $1500 fine. On appeal, Thomas challenges the sufficiency of the evidence supporting her conviction and asserts that (1) the evidence is insufficient to show that the victim was an endangered or impaired adult; (2) the evidence does not show that she purposely abused the victim; and (3) the evidence does not show that her conduct caused serious physical injury or substantial risk of death. We affirm.

On February 7, 2003, paramedics were called to Thomas's home. There they found the victim, Andrew Kaelin, a seventy-seven-year-old man, lying on a mattress in an unheated room. Kaelin's clothes were wet with urine, and he was barely responsive. Michael Deately, one of the responding paramedics, testified that Kaelin attempted to respond and make hand gestures but that the only word Kaelin could manage was "cold." After one of the paramedics commented about how cold it was in Kaelin's room, Thomas brought a space heater from the living room into Kaelin's room. The paramedics were unable to find a pulse in Kaelin's wrist, arm, or neck, and he was transported to the hospital. The paramedics described Kaelin as "very dehydrated," "almost emaciated," "thin," and "pale." Except for the fact that Kaelin was trying to speak, he did not appear to be alive.

When he arrived at the hospital, Pamela Rice, a registered nurse, treated Kaelin. She noted that Kaelin had cuts on both of his hands and pressure ulcers on his body. The pressure ulcers were at stages two and three of a possible four. She, too, noticed that Kaelin's clothes were wet; that his body temperature was only

eighty-four degrees, which amounted to hypothermia; and that Kaelin was unable to talk. She opined that Kaelin's condition probably occurred gradually, and based on his condition, Rice contacted Adult Protective Services. Steve McDonald, another of Kaelin's treating nurses, testified regarding Kaelin's condition. His testimony established that Kaelin was in critical condition, was malnourished, had low blood pressure, with an irregular heartbeat, and had a low body temperature. Kaelin was also in renal failure and was diagnosed with hypothyroidism. McDonald testified that the skin breakdowns and lesions about Kaelin's body would have taken a considerable amount of time to develop — perhaps several weeks, and that it would take a period of months to become as malnourished as Kaelin was upon entering the hospital.

Cindy Sorrells, an employee with Adult Protective Services (APS) with the Arkansas Department of Health testified that APS took custody of Kaelin on March 4, 2003. She spoke with Thomas regarding Kaelin's condition, and Thomas stated that Kaelin had gotten sick the day before the paramedics were called but that he was up walking about before that. Thomas explained that she was Kaelin's caregiver; that she paid his bills and expenses with his $648 monthly social security check; and that she was unaware of the decubitis. Thomas told Sorrells that Kaelin had urinated and defecated on himself shortly before paramedics were called; that she bathed him in warm water; however, Thomas was unable to explain to Sorrells how she was able to heat the water when there was no gas or heat in the house. Later, another witness explained that they had heated the water in an electric crockpot. Sorrells stated that Kaelin died approximately one month after being taken into custody.

Dr. William Sturner performed the autopsy on Kaelin's body and concluded that the cause of death was bilateral bronchial pneumonia due to a subdural hematoma. He attributed the subdural hematoma to blunt trauma to the left side of the head. The injury appeared to be several weeks to perhaps months in age. Sturner stated that Kaelin also had several other conditions which contributed to, accelerated, or aggravated his death. He listed decubitus pressure sores, purpuric hermorrhages, statis post-hypothermia, and arteriosclerotic cardiovascular disease. He also opined that these conditions, depending on the underlying circumstances, would take from weeks to months to develop.

Following Sturner's testimony, the State elicited testimony from six witnesses who all testified extensively about the abuse

Thomas inflicted upon Kaelin. These witnesses' testimony established that Thomas repeatedly hit Kaelin in the face, head, back, and body; pushed him down; and withheld food from him. Some of the witnesses testified that they recalled seeing Kaelin with black eyes and busted lips. They also testified that Thomas verbally abused Kaelin and forced him to stay in his bedroom for hours. One of the witness told of how Thomas forbade Kaelin to leave his room even to use the bathroom and that she placed a bucket in his room so that he could relieve himself. That witness also told of how Thomas and another woman sat Kaelin in front of the door in the middle of winter, placed a fan on him, and poured buckets of water on him. Despite the testimony that Thomas physically and verbally abused Kaelin, some of the State's witnesses testified that Kaelin was mobile, and that he would walk around the house asking for food and cigarettes. One of the witnesses testified that Kaelin could bathe and dress himself and that he could fix his own plate at mealtimes.

At the close of the State's case, counsel for Thomas made the following motion for directed verdict:

> Your Honor — Just a moment — Your Honor, first of all, we would challenging [sic] the charging of Ms. Kaelin under the information as she is charged. It reads that she did purposely abuse, neglect or exploit Andrew Kaelin and she is charged with a B felony.
>
> A B Felony under this statute does not require that she neglect or exploit. Therefore, we would ask that this be at least reduced to a D Felony which more matches the elements of the statute. Neglect is not required; exploitation is not required; exploitation is not required. She is not properly charged.
>
> In addition to that, the elements that have been left off of the B Felony are "*endangered or impaired adult.*" That is required for a B Felony. So we would move to quash these charges, or in the alternative have this reduced to a D Felony and ask for a directed verdict of acquittal on the B Felony.

(Emphasis added.) The trial judge then made the following comments:

> There is some concern that the Court has. The statute reads, "In order to be an endangered adult it means an adult 18 years of age or older who is found to be in a situation or condition which poses

an eminent risk of death or serious bodily harm to that person and who demonstrates a lack of capacity to comprehend the nature and consequences of remaining in that situation or condition." What says the State?

The State responded that the statute requires that the abused adult be endangered or impaired, and that the question of whether or not Kaelin was endangered or impaired was a fact question that should be left up to the jury. Thomas in turn stated that there was no testimony that Kaelin could not care for himself and pointed to the testimony showing that Kaelin had his own room, bathed himself, and prepared his own plate at mealtimes. The trial court denied the motion for directed verdict, stating that he would revisit the issue at the close of the defense's case. Thomas also moved for directed verdict on the lesser-included offense. This motion also attacked the State's proof supporting the endangered-or-impaired-adult element of the offense. Counsel again asserted that there was no testimony establishing that Thomas was an endangered or impaired adult.

The defense presented six witnesses, including Thomas. These witnesses in essence countered the testimony of the State's witnesses. They testified that Kaelin was in fair condition and healthy before his hospitalization. One of the witnesses testified that Kaelin would go outside regularly, feed and water the dogs, and pick pecans. That witness also testified that Kaelin would fight with other members of the household. Another witness testified that she lived on the same street as Thomas; that Kaelin looked fine when he wasn't beaten up; that Kaelin got around on his own; and that she would see him out in the yard, raking leaves and walking about.

Thomas testified regarding Kaelin's ability to care for himself and his daily activities. She stated that Kaelin was active and wanted to be independent. She said that he rode a bike and played with the dog and her children. Thomas admitted, however, that Kaelin had a bike accident in January; that he had a rod placed in one of his legs; and that she had told the investigating officer that the reason she picked up Kaelin's social security check was because he was unable to get around due to the rod in his leg and his age. Thomas also told the officer that Kaelin was a danger to himself and that he had set his own pants on fire on more than one occasion by standing too close to the gas heater. She also admitted that Kaelin ate dog food and scraps from the garbage and that he would find old cigarette butts to chew on. She denied abusing

Kaelin, locking him in his room, withholding food from him, or forcing him to use a bucket to relieve himself.

At the close of the defense's case, counsel for Thomas made the following renewed motion for directed verdict:

> Your Honor, Defendant would have Motion for Directed Verdict, again citing that on the B felony charge requires that a person purposely abuse an engendered or impaired adult causing serious physical injury or substantial risk of death. There is conflicting testimony about the abuse, Judge, but the endangered or impaired adult portion of that statute is defined in the definition section. We've previously discussed those definitions and I don't believe that the State has met its burden as to those two elements. There has been testimony by both the defense witnesses and the State's witnesses that Mr. Kaelin was mobile up until the time he became sick, and I believe that Mr. Sturner, one of the last questions I asked him was it possible that he could have been injured and remain mobile and then fell ill, and he said that was a possibility, so I don't think the State has met its burden and we would ask for a Directed Verdict of Acquittal at this point on the B Felony charge.

The State again argued that the issue of whether Kaelin was endangered or impaired was a fact question for the jury and pointed to testimony showing that Kaelin was seventy-seven years old, never left the home, ate dog food and scraps, and could not defend himself. The trial court agreed that the issue was a fact question for the jury and denied the motion. Thomas brings this appeal.

▮▮▮ A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Lowry v. State*, 90 Ark. App. 333, 205 S.W.3d 830 (2005). On appeal from the denial of a motion for directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Circumstantial evidence may provide the basis for support of the appellant's conviction, but it must be consistent with the appellant's guilt and inconsistent with any other reasonable conclusion. *Nelson v. State*, 84 Ark. App. 373, 141 S.W.3d 900 (2004). Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Lowery, supra.* This court considers only the evidence supporting the guilty

verdict, and the evidence is viewed in the light most favorable to the State. *Id*. Determinations of credibility are left to the jury. *Nelson, supra.*

In this appeal, Thomas challenges the sufficiency of the evidence and raises three sub-arguments. They are: (1) the evidence is insufficient to show that the victim was an endangered or impaired adult; (2) the evidence does not show that she purposely abused the victim; and (3) the evidence does not show that her conduct caused serious physical injury or substantial risk of death. Only the first of these three arguments is preserved for appellate review.

█ Arkansas Rules of Criminal Procedure 33.1(a) and (c) (2005) govern the procedure for challenging the sufficiency of the evidence at a jury trial and provides in pertinent part:

> (a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. *The motion for directed verdict shall state the specific grounds therefor.*
>
> * * *
>
> (c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. *A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. . . .*

(Emphasis added.)

██ At trial, Thomas challenged only the State's proof regarding the endangered–or–impaired–adult element of the statute in her motion requesting directed verdict on the felony charge or reduction to a lesser offense. Thomas did not assert, as she now does on appeal, that the State failed to show that she purposely abused Kaelin or that the State failed to prove that her conduct caused serious physical injury or substantial risk of death. It is well-settled that this court will not consider arguments raised for the first time on appeal, and that a party is bound on appeal by the nature and scope of the objections and arguments presented at trial. *Simmons v. State*, 90 Ark. App. 273, 205 S.W.3d 194 (2005);

*Houston v. State*, 82 Ark. App. 556, 120 S.W.3d 115 (2003). Consequently, we do not address Thomas's second and third sub-arguments.

We conclude that, despite the State's contentions to the contrary, Thomas's argument that substantial evidence does not support the jury's finding that Kaelin was an "endangered or impaired adult" is preserved for our review. Arkansas Code Annotated section 5-28-103 (Repl. 1997) provides in relevant part:

> (a) It shall be unlawful for any person or caregiver to abuse, neglect, or exploit any person subject to protection under the provisions of this chapter.
>
> (b)(1) Any person or caregiver who purposely abuses an endangered or impaired adult in violation of the provisions of this chapter, if the abuse causes serious physical injury or substantial risk of death, shall be guilty of a class B felony and shall be punished as provided by the law.
>
> (2) Any person or caregiver who purposely abuses an endangered or impaired adult in violation of the provisions of this chapter, if such abuse causes physical injury, shall be guilty of a Class D felony and shall be punished as provided by law.

"Endangered adult" means an adult eighteen years old or older who is found to be in a situation or condition which poses an imminent risk of death or serious bodily harm to that person and who demonstrates a lack of capacity to comprehend the nature and consequences of remaining in that situation or condition. Ark. Code Ann. § 5-28-101(1)(A) (Repl. 1997). An "impaired adult" is an adult eighteen years old or older who suffers from mental or physical disease or defect and as a consequence thereof is unable to protect himself from abuse, neglect, or exploitation. Ark. Code Ann. § 5-28-101(11) (Repl. 1997). A "caregiver" means a related or unrelated person, owner, agent, high managerial agent of a public or private organization, or a public or private organization that has the responsibility for the protection, care or custody of an endangered or impaired adult as a result of assuming the responsibility *voluntarily*, by contract, through employment, or by order of the court. Ark. Code Ann. § 5-28-101(3) (Repl. 1997). (Emphasis added.)

Accordingly, the State needed to present evidence that (1) Kaelin was older than eighteen; (2) that he was in a situation

that posed imminent risk of serious injury or death; and (3) that he lacked capacity to comprehend the nature and consequences or remaining in that situation, or (1) that Kaelin was older than eighteen years of age; (2) that he suffered from mental or physical defect; and (3) as a consequence thereof that he was unable to protect himself. We have found no cases discussing the elements of the offense at issue, and the State either does not comprehend the substance of Thomas's argument or has chosen not to respond to it, and has simply narrated all of the facts regarding the abuse suffered by Kaelin as a basis for affirmance on this point. In this regard, we conclude that logic and the requirement of strict construction of criminal statutes dictate that the abuse itself or the conditions which resulted from the abuse cannot substitute for proof of the victim's statutorily-required status as either an endangered adult or impaired adult. Thus, the condition that Kaelin was found to be in at the time of his hospitalization, although dire indeed, along with the description of his various injuries and the cause of his death do not constitute proof of either alternative status of an "endangered" or "impaired" adult. Moreover, although it is undisputed that Kaelin was seventy-seven years old at the time of these events, Kaelin's age alone is insufficient evidence of the vulnerable status required for commission of the offense.

Nonetheless, there was other evidence of Kaelin's status presented to the jury. There was testimony from Thomas that Kaelin had broken his leg and hip in a bicycle accident, walked with a cane, and was unable to attend to his financial affairs. Thomas told officers that she took care of Kaelin's banking because of his age and his inability to get around, although she stated at trial that this was not correct. Thomas also told officers that Kaelin was a danger to himself and would often set his pants on fire. At trial, she testified that Kaelin "caught his pants on fire a "bunch" by standing too close to the gas heaters. She also admitted that Kaelin ate dog food and that he "liked it." Moreover, the medical witnesses testified that Kaelin's injuries and condition took a considerable period of time to develop. We, therefore, conclude that there was sufficient evidence from which the jury could have found that Kaelin was an endangered or impaired adult, or both; that he suffered from a physical or mental defect, or both, and that as a consequence was unable to protect himself from the repeated abuse that he was subjected to or to remove himself from Thomas's

care and control, a situation in which he was quite literally placed at risk of serious injury and which persisted over a considerable period of time.

Affirmed.

BAKER, J., agrees.

BIRD, J., concurs.

SAM BIRD, Judge, concurring. I agree that this case should be affirmed, but I would address only the question of sufficiency of the evidence. Because the evidence is sufficient to support the conviction, I do not think it necessary to address the issue of whether the abuse or conditions resulting from the abuse can constitute proof of the victim's status as an endangered or impaired adult.

Thus, I concur.