Sheila BLAIR  *v.*  STATE of Arkansas

CA CR 08-476                                        288 S.W.3d 713

Court of Appeals of Arkansas
Opinion delivered October 29, 2008

*Dyer and Jones*, by: *F. Parker Jones, III*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Sheila Blair appeals from her conviction for driving while intoxicated (DWI).[1] She argues that her conviction should be reversed because the State failed to prove that she was driving a vehicle or that she was driving while intoxicated. Because an eyewitness identified appellant as the driver and sufficient circumstantial evidence proved that she was intoxicated, we affirm her conviction.

### Background Facts

Appellant was arrested for DWI after police investigated a report made by a citizen, George Brooks. Brooks testified that he observed a silver compact car stopped under a red light at an intersection. Despite the fact that there was no place to turn left, the car's left-signal light was blinking. Brooks said that other drivers were forced to go around the car, which remained stationary through a light change.

Concerned, Brooks followed the car when it finally moved forward. He saw the car weave over the center line, causing oncoming traffic to pull over to avoid being hit. When the car pulled into a driveway, Brooks also pulled aside. When the driver began to attempt to re-enter the roadway, Brooks exited his car, put his hands on the hood of the other car, and told the driver to stop.

Brooks went to the driver's side of the vehicle and spoke to the driver, who had lowered the window. He identified appellant as the driver, and testified that appellant was the only person in the car. According to Brooks, appellant "smelled like a brewery." He told appellant that she could either permit him to call his wife to drive appellant home or he would report appellant to the police. Appellant replied, "Call 'em," and drove from the driveway, slinging gravel as she went. Brooks made a written note of her license plate number and then contacted the police.

Benton Police Officers Jeffrey Parsons and Eric Porter responded to the call. Parsons testified that the call concerned a white, intoxicated female driving erratically in a silver Honda. Approximately six minutes later, the officers arrived at the address to which the Honda's license plate was registered. Appellant's car

---

[1] Appellant has either been convicted of or has pleaded guilty to ten DWIs in twelve years, seven of which occurred over the past five years.

was parked in the space between her neighbor's driveway and her own; Porter testified that he saw the brake light flash as they approached appellant's vehicle.

Appellant exited the car from the driver's seat, with the keys in her hand. By the time the officers approached her, she was on her front porch. She carried some brown paper bags, one of which contained an empty beer can and several unopened beer cans. Parsons said that appellant's eyes were watery and bloodshot and that he could smell intoxicants on her breath; Porter similarly described her eyes as "bloodshot and glassy."

Parsons asked if appellant had been drinking. She admitted that she had, but she said that her son drove her to her house and then left. She explained that her son had taken her to Wal–Mart, but she had no Wal–Mart bags. Parsons said that appellant's speech was slurred. After Parsons spotted some prescription bottles in plain view in one of her bags, appellant told him that she took Xanax three times per day.

Parsons administered the horizontal-gaze nystagmus test (HGN test), which indicated that appellant was intoxicated. Parsons explained that three or more "clues" on the HGN test constitutes a 77% likelihood of impairment. He further explained that appellant showed all six clues. Next, Parsons administered a one-leg stand test, which requires a person to stand on one leg and count aloud while looking at her feet. During this test, appellant lowered her foot down three times and once used her arms to balance herself. She agreed to blow into a portable breath tester, but Parsons testified that she purposely covered the mouthpiece with her tongue to cause a lower reading.

Appellant was arrested and placed in the back of the police car. At that point, her minor son, Colton Thomas, arrived. Appellant pleaded with Colton to tell Parsons that he had driven her home. Parsons said that Colton refused, saying, "I'm sorry, Mom, I'm not going to do that." Appellant became upset and yelled at her son.

When they arrived at the police station, appellant made what Parsons called an "exaggerated" sucking noise with her mouth and told the officer that she had a mint in her mouth. When he instructed her to spit it out, she attempted to spit behind a pillar of the building. He then instructed her to spit it out in his view. When she spat, the officer saw no mint on the ground; he checked her mouth but found nothing. Even so, Parsons waited twenty minutes before administering the blood–alcohol test.

Appellant blew into the machine as instructed, but as the display approached the .08 level, she stopped blowing. After appellant did that several times, Parsons was required to begin the test again. On the second test, the officer finally obtained a reading of .075. By this time, a little more than one hour had passed from when the officers first encountered appellant.

Carrie Nelson, who works in the Saline County Sheriff's Department, collected a urine sample from appellant. She described appellant as "real slow, slow speech, slow movements." Allison Beekman, a forensic toxicologist with the Arkansas State Crime Laboratory, testified that appellant's urine sample revealed the presence of Xanax. Beekman said that when alcohol is consumed with Xanax, it increases the depressive effects of alcohol.

Colton testified on his mother's behalf. Colton, who was seventeen, claimed that he was the person driving appellant's car, and that he picked up appellant at work. Appellant worked in the hair salon located inside of Wal-Mart. Colton said that she had groceries with her, and that he drove her to the liquor store. He claimed that he "missed the red light" because he was "messing with the radio." He said that he swerved because he and his mom were arguing over the fact that he was "messing with the radio."

Colton said that a man followed them to appellant's boyfriend's house, and that appellant got out of the car and spoke to the man. Colton said that he took appellant home, where his girlfriend was waiting, then unloaded the groceries, leaving appellant's car keys on the table. He and his girlfriend thereafter left in his work truck to get gas, and returned to find appellant in the back of the police car.

When questioned about whether he refused to tell the officers at the scene that he had been driving appellant's car, Colton admitted that appellant told him to tell the officers that he had been driving. He agreed that appellant was "pretty upset." But, in contrast to Parsons's testimony, Colton claimed that he told Parsons, "I'm not saying I'm driving her right now and I'm not saying I'm not . . . I said I'd tell them later."

At the close of the State's case-in-chief, appellant moved for a directed verdict, arguing that "the State has failed to meet its burden of showing that the defendant has been driving or that she has been driving while she was intoxicated." The trial court denied the motion, and further denied appellant's renewal on the same grounds. The jury found appellant guilty of DWI and sentenced her to serve ten years' imprisonment.

*Discussion*

Appellant now argues that the circuit court erred in denying her motion for a directed verdict. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *See Thomas v. State*, 92 Ark. App. 425, 214 S.W.3d 863 (2005). On appeal from the denial of a motion for a directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is that evidence that is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* Circumstantial evidence may constitute substantial evidence, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* We consider only the evidence supporting the guilty verdict and view the evidence in the light most favorable to the State. *Id.* Determinations of credibility are left to the trier-of-fact. *Id.*

Appellant was convicted of driving while intoxicated, in violation of Ark. Code Ann. § 5-65-103 (Repl. 2005), which provides:

> (a) It is unlawful and punishable as provided in this act for any person who is intoxicated to operate or be in actual physical control of a motor vehicle.

> (b) It is unlawful and punishable as provided in this act for any person to operate or be in actual physical control of a motor vehicle if at that time the alcohol concentration in the person's breath or blood was eight-hundredths (0.08) or more based upon the definition of breath, blood, and urine concentration in § 5-65-204.

Appellant first argues that the State failed to present substantial evidence that she was the driver because the police did not see her driving, because she did not confess to driving, and because there was no evidence of her intent to drive after the moment of arrest. *See Azbill v. State*, 285 Ark. 98, 685 S.W.2d 162 (1985) (citing the foregoing as ways in which the State may prove the identity of the driver). This argument fails because the State is not required to prove that a law enforcement officer actually witnessed the intoxicated person driving or exercising control over the vehicle; rather, the State may make that showing by circumstantial evidence. *See Wetherington v. State*, 319 Ark. 37, 889 S.W.2d 34 (1994). Similarly, the State is not *required* to prove that the defendant confessed or prove that she possessed an intent to drive drunk.

Here, there was both direct eyewitness testimony and circumstantial evidence proving that appellant was the driver. Brooks identified appellant as the driver who was behind the wheel of the car that he had observed stopped at the red light and later observed swerving. After appellant stopped, he spoke with her and then saw her drive away after she challenged him to contact the police. In addition, Officer Porter saw the brake light flash on appellant's car before appellant exited the car from the driver's side with the keys in her hand. This constituted substantial evidence to establish that appellant was the driver. *See, e.g., Springston v. State*, 61 Ark. App. 36, 962 S.W.2d 836 (1998) (holding that the defendant either operated or was in actual physical control of the vehicle where he was discovered by police walking away from a one-vehicle accident involving his truck, where he had the truck keys in his pocket, and where there was testimony that he had been driving the truck shortly before his encounter with police).

Appellant's second argument is that the State failed to prove that she was intoxicated because her blood-alcohol content was .07, below the legal limit. In response to Parsons's testimony that she attempted to obstruct the blood-alcohol testing process, she argues that she was not cited for refusal to submit to any of the tests.

This argument, too, fails. Proof of blood-alcohol content, although admissible as evidence tending to prove intoxication, is not necessary to sustain a DWI conviction. *See Wilson v. State*, 285 Ark. 257, 685 S.W.2d 811 (1985). A blood-alcohol level of more than .04 but less than .08 does not give rise to a presumption that the defendant was intoxicated, but may be considered with other competent evidence in determining whether she was intoxicated. Ark. Code Ann. § 5-65-206(a)(2) (Supp. 2007).

A person is "intoxicated" if she is influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, a controlled substance, or an intoxicant, to such a degree that her reactions, motor skills, and judgment are substantially altered and she, therefore, constitutes a clear and substantial danger of physical injury or death to herself and other motorists or pedestrians. Ark. Code Ann. § 5-65-102(2) (Repl. 2005). The observations of police officers with regard to the smell of alcohol and actions consistent with intoxication can constitute competent evidence to support a DWI charge. *See Johnson v. State*, 337 Ark. 196, 987 S.W.2d 694 (1999).

■ In sum, based on the eyewitness testimony identifying appellant as the driver, appellant's admission that she had been drinking, her blood-alcohol reading, the failure of her field tests, the manner in which she drove the vehicle, and the witnesses' observations regarding her inebriated condition, the jury could have reasonably concluded that she was driving while intoxicated. *See, e.g., State v. Johnson,* 326 Ark. 189, 931 S.W.2d 760 (1996) (affirming a DWI conviction where the defendant's blood-alcohol content was .06 percent, where police officers testified that there was no doubt in their minds that defendant was intoxicated, where they observed defendant's slurred speech and red and glassy eyes, and one officer smelled the odor of intoxicant on the defendant, who admitted to him that he had "had a few"). Here, although appellant's son testified that he was the driver, his testimony could have readily been discounted by the jury. As appellant is his mother, he is an interested witness, and notably, his testimony contradicted the statement he made to the officers, as well as Brooks's testimony.

■ Finally, the fact that appellant was not cited for refusal to submit to the test is of no moment because she did not refuse to submit to testing. What appellant *did* was to deliberately delay Parsons in obtaining a successful test result by blatantly interfering with the testing. By the time a successful result was obtained, more than one hour had passed, and her blood-alcohol content had dropped to only .07. If the refusal to be tested is admissible evidence on the issue of intoxication and may indicate the defendant's fear of the results of the test and the consciousness of guilt, *see Johnson v. State, supra,* then a defendant's attempts to *prevent accurate* testing surely may be considered as similar proof of guilt.[2]

Affirmed.

BIRD and GLOVER, JJ., agree.

---

[2] We do not read the officer's testimony to suggest that a suspect may defeat a breathalyzer test by simply holding her breath when the reading approaches the .08 level. Rather, the officer's testimony established that appellant repeatedly stopped her air flow in an apparent attempt to prevent the breathalyzer from registering a sufficient volume of breath to test her blood-alcohol content. We emphasize that our decision does not turn on whether appellant's efforts to interfere with testing were or could have been successful. Even futile efforts to interfere with blood-alcohol testing may be considered as proof of guilt.