2011 Ark. App. 432
**Malcolm MORTON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–1231.**

Court of Appeals of Arkansas.

June 15, 2011.

13. *Id.*

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*

18. *Id.*

19. *See Thomsen v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 687, 370 S.W.3d 842.

Norman Mark Klappenbach, Fordyce, for appellant.

Dustin McDaniel, Atty. Gen., Brad Newman, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Malcolm Morton was convicted by a jury of careless driving, driving while intoxicated, possession of marijuana, and possessing an instrument of crime. For his convictions he was sentenced to nine months in jail and fined $750. Mr. Morton appeals only from his conviction for DWI. On appeal, he challenges the sufficiency of the evidence to support that conviction. In addition, Mr. Morton argues that the trial court erred in refusing to allow the testimony of Deputy Johnny Davis as to the effects of carbon monoxide

poisoning based on his personal experience. We affirm.

When an appellant challenges the sufficiency of the evidence, we review the sufficiency argument prior to a review of any alleged trial errors. *Bohanan v. State*, 72 Ark.App. 422, 38 S.W.3d 902 (2001). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion with reasonable certainty, without resort to conjecture. *Breedlove v. State*, 62 Ark.App. 219, 970 S.W.2d 313 (1998). We review the evidence in the light most favorable to the State, considering only the evidence that tends to support the verdict. *Jenkins v. State*, 60 Ark.App. 1, 959 S.W.2d 57 (1997).

Detective Jim Sanders of the Union County Sheriff's Department testified for the State. Detective Sanders stated that he was on patrol at about 6:00 p.m. on February 14, 2009, when he responded to a call about a reckless driver. Detective Sanders indicated that he located Mr. Morton's vehicle and observed erratic driving on the highway, and he initiated his blue lights. Detective Sanders stated that he saw appellant's car leave the roadway, and then it "high-centered" on the side of the road. According to Detective Sanders, Mr. Morton's car was stuck on an incline but the accelerator was still engaged and one of the tires was barely in contact with the road and spinning.

Detective Sanders cautiously approached the car and saw that Mr. Morton was apparently passed out with his foot still on the accelerator. Detective Sanders tried numerous times to access the vehicle to turn the ignition off, but the car was locked. After Detective Sanders radioed for backup, Mr. Morton partially opened his eyes and eventually turned the car off and unlocked the door.

State Trooper Brian Albritton arrived and assisted in taking Mr. Morton into custody. The officers had to assist Mr. Morton in exiting his vehicle. Detective Sanders described appellant as being in a daze, unresponsive, and unable to walk or stand on his own. Officer Albritton testified that Mr. Morton was unstable, incoherent, and was slurring his speech. According to Officer Albritton, Mr. Morton appeared at one point to have fallen asleep while leaning against the trooper's patrol car.

Officer Albritton testified that he smelled an odor of marijuana emanating from appellant's vehicle. Officer Albritton asked Mr. Morton about the odor, and Mr. Morton admitted that he had been smoking marijuana and that there was marijuana in the car. Mr. Morton's car was searched and the police discovered marijuana, including a partially-smoked joint. Several bottles of cold medicine were found inside the vehicle, and Mr. Morton told the police he had ingested large amounts of it. The police searched Mr. Morton's person and found rolling papers.

Detective Albritton testified that it was obvious that Mr. Morton was intoxicated so he arrested him for DWI, as well as for possession of marijuana. Mr. Morton was transported by the police to the hospital, and his blood was drawn for testing. Then Officer Albritton transported appellant to the sheriff's office. Officer Albritton stated that he had Mr. Morton call someone to pick him up at the sheriff's office, and that Mr. Morton had improved but was still intoxicated at that time.

Heather Singletary, a forensic pathologist, tested appellant's blood sample at the crime lab. Ms. Singletary testified that the sample was negative for alcohol, but positive for cannabinoids (marijuana). Ms.

Singletary also found a 5 percent level of carbonoxyhemoglobin in Mr. Morton's blood. She said that this percentage was normal, and that a person suffering from carbon monoxide poisoning would likely have a 20 percent or 30 percent level of carbonoxyhemoglobin.

Deputy Johnny Davis of the Calhoun County Sheriff's Department was called as a witness for both the State and the defense. During the State's case, Deputy Davis testified that he had made contact with Mr. Morton between 3:30 p.m. and 5:00 p.m. on February 14, 2009, while Mr. Morton was sitting in his car. Deputy Davis said that appellant's vehicle was not running at that time and that Mr. Morton appeared normal. Deputy Davis did not smell marijuana and stated that Mr. Morton did not appear intoxicated at that time.

As a witness for the defense, Deputy Davis testified that he is also the coroner in Calhoun County, and that he knows the effects of carbon monoxide poisoning from his experience. The State objected to Deputy Davis testifying about the effects of carbon monoxide poisoning based on lack of qualification. On voir dire, Deputy Davis acknowledged that he had treated only one person with carbon monoxide poisoning and that it was more than ten years ago, and he said that he had never personally experienced it. The trial court sustained the State's objection, and Deputy Davis was excused.

Mr. Morton testified in his own defense. Mr. Morton acknowledged that on the day at issue he spoke with Deputy Davis, and then he smoked some marijuana. Mr. Morton indicated that he smoked about one-third of a joint while his car windows were down. He maintained that he then turned the fan to high, rolled up the windows and proceeded to drive down the highway. Mr. Morton indicated that he made it less than two miles before he got lightheaded and began to pass out. Mr. Morton acknowledged that he could not stand up straight and had to be assisted by the officers in getting out of his car. However, he stated, "I don't think that a half-joint would have caused that," and that "marijuana has never affected anybody that way." Mr. Morton maintained that his condition was caused by carbon monoxide poisoning.

■ Mr. Morton's first argument on appeal is that there was insufficient evidence to support his DWI conviction. Arkansas Code Annotated section 5–65–103(a) (Repl. 2005) provides that it is unlawful for any person who is intoxicated to operate or be in actual physical control of a motor vehicle. "Intoxicated" means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, a controlled substance, or an intoxicant, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury to himself and other motorists or pedestrians. Ark.Code Ann. § 5–65–102(2) (Repl. 2005). Mr. Morton concedes that he was in control of a motor vehicle, but challenges the State's proof that he was intoxicated.

In support of his challenge to the sufficiency of the evidence, Mr. Morton directs us to his testimony where he admitted to smoking a partial marijuana cigarette, but stated that marijuana would not have caused him to fall asleep and have difficulty standing. Mr. Morton blamed his incoherence and other symptoms on carbon monoxide poisoning, and he claims that this assertion was corroborated by the testimony of the crime-lab pathologist, Ms. Singletary. Ms. Singletary acknowledged in her testimony that it is possible that carbon monoxide poisoning could cause a

person to feel disoriented. Moreover, while Ms. Singletary detected the presence of marijuana in appellant's blood, she did not testify as to the level of marijuana in his system. For these reasons, Mr. Morton contends that the State failed in its burden of proving he was intoxicated.

We hold that substantial evidence supports Mr. Morton's DWI conviction. The evidence viewed in the light most favorable to the State showed that Mr. Morton was driving his car erratically, causing him to leave the highway and then get stuck on an incline on the side of the road. Mr. Morton was either passed out or unresponsive with his foot still on the accelerator and a tire spinning. The police had to help Mr. Morton out of his car, and he was unsteady and unable to walk or stand on his own. Detective Sanders described appellant as being in a daze, and his speech was slurred. The car smelled of marijuana, it contained a partially-smoked joint, and Mr. Morton told the police he had been smoking marijuana as well as ingesting large amounts of cold medicine. Mr. Morton testified at trial that he had been smoking marijuana immediately before operating his vehicle that evening.

While Mr. Morton testified that he was suffering from the effects of carbon monoxide poisoning as opposed to marijuana, the jury was not required to believe his testimony, as he was the person most interested in the outcome of the trial. *See* *Brown v. State*, 100 Ark.App. 172, 265 S.W.3d 772 (2007). Appellant's blood sample was tested for carbon monoxide and the test revealed no abnormality. His blood tested positive for marijuana, and contrary to appellant's argument there is no statutory requirement that a specific concentration be proved. The observations of police officers with regard to actions consistent with intoxication can constitute competent evidence to support a DWI charge. *Blair v. State*, 103 Ark.App.

322, 288 S.W.3d 713 (2008). From the evidence presented, the jury could conclude with reasonable certainty that Mr. Morton's use of marijuana influenced him to such a degree that he presented a clear and substantial danger of physical injury to himself and others.

■ Mr. Morton's remaining argument is that the trial court erred in refusing to allow the testimony of Deputy Davis regarding the effects of carbon monoxide poisoning. Rule 701 of the Arkansas Rules of Evidence provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) Rationally based on the perception of the witness; and

(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

In his testimony Deputy Davis stated that he was the Calhoun County coroner and knew the effects of carbon monoxide poisoning, and Mr. Morton submits that his testimony should have been allowed pursuant to Rule 701. Mr. Morton contends that this testimony was essential to his defense that he was suffering from carbon monoxide poisoning and not the effects of smoking marijuana.

We conclude that Mr. Morton's challenge to the trial court's evidentiary ruling is not preserved for review. It is well-settled that when challenging the exclusion of testimony, an appellant must make a proffer of the excluded evidence at trial unless the substance of the evidence is apparent from the context. *Halford v. State*, 342 Ark. 80, 27 S.W.3d 346 (2000). The purpose of such a proffer is so that the record may disclose the substance or purport of the excluded testimony thereby allowing the appellate court to determine whether or not the rejection of the evi-

dence was prejudicial. *Woods v. State,* 342 Ark. 89, 27 S.W.3d 367 (2000). Absent a proffer of the excluded testimony, we have no way of knowing whether the appellant was prejudiced by the challenged ruling. *Leaks v. State,* 339 Ark. 348, 5 S.W.3d 448 (1999). In the case at bar, there was no proffer of what Deputy Davis's testimony would have been, and therefore we need not address the exclusion of his testimony.

 Even had appellant preserved this issue by making the required proffer below, it could not warrant reversal. Rule 701 seeks to balance the need for relevant evidence against the danger of admitting unreliable testimony, and a trial court's decision whether to allow lay-opinion testimony under Rule 701 will not be reversed absent an abuse of discretion. *See Moore v. State,* 58 Ark.App. 120, 947 S.W.2d 395 (1997). In the present case the trial court did not abuse its discretion in disallowing Deputy Davis's opinion about the effects of carbon monoxide poisoning given his testimony that his personal knowledge consisted only of treating one person more than ten years earlier.

Affirmed.

MARTIN and BROWN, JJ., agree.