Cite as 2025 Ark. App. 335

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-24-661

| | |
|---|---|
| KENNETH KING<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered May 28, 2025<br><br>APPEAL FROM THE WHITE COUNTY CIRCUIT COURT<br>[NO. 73CR-23-570]<br><br>HONORABLE MARK PATE, JUDGE<br><br>AFFIRMED |

**CASEY R. TUCKER, Judge**

Kenneth King appeals his conviction of driving while intoxicated—drugs (DWI) at the conclusion of a bench trial in the White County Circuit Court. On appeal, he asserts that the trial court erred in denying his motion for directed verdict. We affirm.

Generally, in a bench trial, a motion for directed verdict is treated as a motion to dismiss. Ark. R. Crim. P. 33.1; *Colen v. State*, 2022 Ark. App. 148, 643 S.W.3d 274. "A motion to dismiss at a bench trial is identical to a motion for directed verdict at a jury trial in that it is a challenge to the sufficiency of the evidence." *Harding v. State*, 2024 Ark. App. 560, at 3, 700 S.W.3d 521, 523. The appellate court will affirm the trial court's decision if there is substantial evidence to support the verdict. *Id.* Substantial evidence is defined as evidence that compels a conclusion beyond suspicion and conjecture. *Porter v. State*, 2023 Ark. App. 64, 660 S.W.3d 875. On appeal, the evidence is viewed in the light most favorable

to the verdict, and we consider only that evidence that supports the verdict. *Cottrell v. State*, 2024 Ark. App. 175, 686 S.W.3d 582. This court does not weigh the evidence or assess the credibility of witnesses because these are matters for the fact-finder. *Id.*

Viewed in the light most favorable to the verdict, the evidence at the bench trial was as follows. On January 5, 2022, White County Deputy Sheriff Garrett Walters stopped King after he failed to yield at a stop sign, and Walters had to hit his brakes to avoid a collision. While conducting the stop, Deputy Walters smelled the odor of marijuana coming from King's car. Deputy Walters obtained King's driver's license, registration, and insurance documents and ran his information through the Crime Information Center system. When he did so, he found that King had a search waiver on file. Upon questioning, King told Deputy Walters that he did not have any marijuana and had not smoked it recently. Deputy Walters had King exit the vehicle and began conducting field sobriety tests on him.

Deputy Walters is certified in ARID--Advanced Roadside Impairment Detection-- for DWIs and DUIs. At one time, he was a certified drug recognition expert, but he had let that certification expire before he stopped King. Deputy Walters put King through the horizontal-gaze-nystagmus test (the HGN), the walk-and-turn test, and the one-leg-stand test. King showed no clues of impairment in response to the HGN, which, according to Deputy Walters, is consistent with marijuana use. Deputy Walters testified that King showed three clues of impairment during the walk-and-turn test: (1) he missed a heel-to-toe step; (2) he did not conduct the turn properly; and (3) he stepped off the imaginary line on which he was walking. During the one-leg-stand test, King again exhibited signs of impairment in that he

2

swayed, used his arms for balance, and had to put a foot down. After conducting the first three tests and observing clues, Deputy Walters conducted a lack-of-convergence test. In this test, the officer tells the driver to keep his eyes on his finger, then circles his finger around the driver's face and eventually moves the finger almost to the driver's nose. The driver's inability to converge, or cross, his eyes aids the tester in narrowing down what kind of drug the driver has used. King was unable to cross his eyes. Deputy Walters acknowledged that not everyone can cross their eyes, even when sober. At the scene, King told Deputy Walters that he did not know whether he could cross his eyes because he had never tried. The dash-camera video and Deputy Walters's body-camera video, both of which captured the field sobriety tests, were played for the court and entered in the record.

While Deputy Walters was conducting field sobriety tests, other officers searching King's car found marijuana. After completing the field sobriety tests, King admitted that he had gotten marijuana from a friend, and he might have had one hit earlier while at his friend's house. Deputy Walters took King to the station where King gave a urine sample. The sample tested positive for marijuana; however, as acknowledged by Walters, a positive urine sample of the type conducted does not indicate when the marijuana was ingested, how much was ingested, or whether the person is currently under the influence. Before giving the urine sample, King told Deputy Walters that he would probably test positive because he had smoked marijuana the day before.

King moved for a directed verdict, which the court denied. The court found King guilty of DWI—drugs and sentenced him to fifteen days in the county jail and a fine of $1,000. King filed a timely notice of appeal.

It is unlawful to drive a motor vehicle while intoxicated. Ark. Code Ann. § 5-65-103(a)(1) (Repl. 2024). "Intoxicated" means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, a controlled substance, or an intoxicant, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself or herself or another person." Ark. Code Ann. § 5-65-102(4) (Repl. 2024). Opinion testimony on whether an individual is intoxicated is admissible, and it is the fact-finder's role to determine the testimony's weight and credibility. *Roger v. State*, 2024 Ark. App. 340, 690 S.W.3d 465; *Mace v. State*, 328 Ark. 536, 944 S.W.2d 830 (1997). An officer's observations of a driver while going through field sobriety tests constitute competent evidence supporting a DWI charge. *Id.*

Here, Deputy Walters's testimony was that King either ran or failed to yield at a stop sign and exhibited multiple signs of intoxication during the field sobriety tests—namely, the walk-and-turn test and the one-leg-stand test. And while King could not cross his eyes on the lack-of-convergence test, he did not have a problem performing the HGN test. Deputy Walters testified that the combination of these results is indicative of intoxication from ingestion of marijuana.

4

King asserts that *Robinson v. State*, 98 Ark. App. 237, 254 S.W.3d 750 (2007), is applicable in the present case. We disagree. In *Robinson*, this court held that the circuit court erred in finding sufficient evidence of intoxication, reducing the appellant's conviction from Class C felony negligent homicide to Class A misdemeanor negligent homicide. Tests on the appellant's blood and urine were positive for various drugs. However, they were inconclusive as to when the drugs were ingested and whether the appellant was under the influence when she caused a fatal collision. The same can be said of the test performed on King's urine sample in the case before us. However, the cases are distinguishable in that in *Robinson*, neither the officers on the scene of the collision nor the appellant's coworkers who saw her before the accident thought she was intoxicated. Conversely, in the present case, Deputy Walters conducted field sobriety tests and, based on the results, opined that King was intoxicated. Moreover, King admitted having taken "a hit" of marijuana at his friend's house earlier that day.

We find the case at bar to be more in line with *Reece v. State*, 2025 Ark. App. 68, 704 S.W.3d 872, in which the appellant ran a stop sign; the odor of alcohol and marijuana came from his car; he admitted drinking some alcohol earlier in the night; and he failed field sobriety tests. *See also Morton v. State*, 2011 Ark. App. 432, at 7, 384 S.W.3d 585, 589 ("The observations of police officers with regard to actions consistent with intoxication can constitute competent evidence to support a DWI charge."). Substantial evidence supports the circuit court's finding that King was affected by marijuana to the extent that his reactions, motor skills, and judgment were substantially altered; and he, therefore, constituted a clear

5

and substantial danger of physical injury or death to himself or another person.  Accordingly, we affirm.

Affirmed.

KLAPPENBACH, C.J., and GLADWIN, J., agree.

*Simpson & Simpson*, by: *James A. Simpson, Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.